Argued March 31; reversed April 14; rehearing denied
June 23, 1931.

## JACOB *v.* PACIFIC EXPORT LUMBER CO.

(297 P. 848)

*Thomas G. Greene,* of Portland, for appellant.
*Alfred P. Dobson,* of Portland, for respondent.

BEAN, C. J. During the years 1917, 1918 and 1919, defendant was engaged in the export and import business, dealing principally in timber products and oriental merchandise on an extensive scale, its sales averaging approximately $2,750,000 per year. During the months of January and February, 1921, the commissioner of internal revenue caused defendant's books and records to be audited and investigated. Based upon the revenue agent's report of such investigation, additional income and excess profits tax assessments were proposed as follows: $9,513.46 for the year 1917; $19,764.10 for the year 1918; $4,031.16 for the year 1919, amounting in all to $33,309.02.

About March 12, 1921, defendant employed Messrs. Whitfield, Whitcomb & Company to defend it against the proposed assessments—subsequently the firm was Whitfield, Jacob & Company, of which plaintiff was a member—and instructed plaintiff, who was at that time in charge of the income tax department of the firm, to make a close and careful analysis of its various records and accounts involved in the reports for the purpose of determining whether the findings and conclusions of the revenue agent could be refuted or in some manner absorbed by offsets or credits.

Upon the dissolution of the firm of Whitfield, Whitcomb & Company, Accountants, plaintiff Jacob succeeded to the account in controversy. Hereafter we will refer to the account as plaintiff's.

Plaintiff, after first having made a careful analysis of the reports, proceeded with the work contemplated by such engagement and continued therewith for a period of approximately four years and eight months, until about October 21, 1925, when the commissioner of internal revenue, by letter, passed upon the last of defendant's claims presented and considered. Plaintiff asserts that as a result of such services the defendant was relieved of the payment of additional income and excess profits taxes for the years 1917, 1918 and 1919, including interest and penalties thereon, amounting to approximately $45,035.02. On November 6, 1925, the final bill for services was rendered by plaintiff, who had been paid $2,000 for his services and expenses during the course of the employment, amounting to a balance of $2,750 for services and $370 for expenses, making a total charge for services of $4,400, and expenses $720. Defendant contended that plaintiff had been paid in full. After considerable negotiation the parties agreed to submit the dispute to an arbitrator. Mr. Whitfield suggested Frank L. Shull as a competent person for that office. The following agreement of submission was executed by the parties:

"Pacific Export Lumber Co., Portland, Oregon, November 30, 1926. Messrs. Whitfield, Whitcomb & Company, c/o Wm. Whitfield, Esq., Pacific Bldg., Portland, Oregon. Dear Sirs:

"Further to numerous conversations, we agree to submit to the final and binding decision of Mr. Frank L. Shull, the dispute between us growing out of your claim for additional compensation for your services in our behalf in securing a reduction of our income and profit tax for the years 1917-18 and 19.

"As a starting point, it must be admitted that the expense of your travelling to and living in Washington was in the interests of numerous clients.

"We repeat our contention that we have already paid you in full.

"The foregoing proposal is final and is effective only if approved by Messrs. Whitfield, Whitcomb & Company, or by their qualified successors, by December 4, 1926.

"We mutually agree to be bound by the decision of Frank L. Shull, as outlined above, each side to pay one-half the arbitrator's fee. Yours very truly, Pacific Export Lumber Co., W. W. Payne, President. Confirmed: Dec. 2, 1926. Whitfield, Whitcomb & Co., by Wm. Whitfield. Whitfield, Jacob & Co., by Wm. Whitfield."

The arbitrator took the required oath. The matter seemed to have rested until about June, 1927, when the plaintiff urged the arbitrator to have the defendant submit a statement. About August 24, 1927, plaintiff submitted his statement to the arbitrator, the commencement of which is:

"The question submitted for arbitration is the reasonableness of charges made by the complainants herein to the Pacific Export Lumber Company, as compensation for services rendered. The facts upon which we rely as a basis for our claims are as follows:"

Here follows a detailed statement of the facts as claimed by plaintiff: Employment March 12, 1921, when no mention was made by Mr. Wheelwright or by either of the members of the firm of Whitfield, Whitcomb & Company regarding fees, rates, charges, or the basis of compensation for services; a certified copy of the original engagement order; letter of August 10, 1922, addressed to the president of defendant; letter of the treasury department dated November 1, 1926; statement of the value of the service as tax counselors, well-trained in the income tax law, having had long

and close familiarity with all the government's requirements in Portland and in Washington, D. C.; that efficient and valuable service for the defendant was performed, which is evidenced by the actual cash saving to the company of large amounts, making a total net saving to the company of $37,035.02; a statement of the fees charged, as follows:

"Charge for service ................................$4,400.00
Expenses advanced ............................ 720.04

$5,120.04
Less: Payments on account:
July 23, 1921 .....................$1,000.00
August 19, 1922 .................. 500.00
August 19, 1924 .................. 500.00 2,000.00

Balance of fees and expenses now claimed
as due ..........................................$3,120.04
Plus interest at 7 per cent from December
10, 1925, to August 24, 1927 ................ 373.10

Total due ................................$3,493.14"

together with a detailed statement and explanation as regards the expenses advanced, showing that the total expense of the trips to Washington was prorated with other clients of plaintiff; the time plaintiff devoted to the work and supervision of the case; statement of the investigations; preparation of amended returns for 1917 and 1918; work done in Washington with an attorney employed by defendant instructing him in the facts of the case and rudiments of the income tax law; hearings before the treasury department some twenty times; preparation of numerous briefs and claims; presentation and arguing of the same; the origin of the cause of additional tax; plaintiff's examination and preliminaries; the outstanding points involved in

the revenue agent's report that were involved in the work; the question of making a consolidated return for the Pacific Export Lumber Company and the R. J. Brown Company, said to be an affiliated concern; the success in getting salaries allowed as paid to the officers of the defendant; the difficult problems involving the actual saving to defendant; the appeal taken from the commissioner of internal revenue and the favorable result; the fact that the claim was previously filed for the year 1918 by an attorney for defendant but the commissioner refused to allow the claim; that the attorney's work was of no avail; that the assessment was set aside without payment or bond; statement and argument in regard to the character of the work performed by plaintiff; an explanation of the book reserve, $15,270.70, which defendant says plaintiff estimated as the liability of defendant at a time when there was a change in the ownership of the stock of defendant when purchased by W. W. Payne; a detailed statement of the services rendered after August 10, 1922, when a bill was presented to defendant for services rendered to that date; a letter of that date from Whitfield, Whitcomb & Company to W. W. Payne, president of defendant, reading in part as follows:

"Replying to your request for a statement of probable further expense, beg to state it is impossible to give you any idea of this, but all of the detail work has heretofore been done and we do not anticipate it will be necessary to spend a great deal more time."

and an explanation thereof; dates of the appearances before the department to present evidence and argument; a reanalysis of the accounts and rearranging the data of defendant; a detailed statement of the preparation of documents; statement of saving to defendant

taxpayer, and an argument in regard thereto, which several matters were stated at length and reference made to exhibits and proof somewhat combined with argument in regard to plaintiff's claim.

In addition the plaintiff submitted seven affidavits of experienced tax consultants and accountants of the Northwest, as to the value of the services performed by plaintiff, and clients of plaintiff for whom they had performed similar services, and the percentage charged, and a summation, "Summing up the facts in the case we have the following: * * * (8) We claim that the fees billed are exceptionally fair and reasonable, and justified by results accomplished for the client." The statement covers about seventeen pages of typewritten matter. Plaintiff also submitted with his statement and affidavits, several exhibits, C-1 to C-21, consisting of two lengthy statements from the treasury department and various letters from the treasury department pertaining to the tax matter. These statements, affidavits and exhibits were in the possession of the arbitrator for ninety days, and were studied and considered for several days.

The defendant, about November 12, 1927, and after the plaintiff had requested the arbitrator to have the defendant submit its case, submitted nine pages of typewritten matter embracing its statement and exhibits, consisting of letters between plaintiff and defendant, referring to the "reserve" of $15,270.70 in October, 1921, made by Whitfield, Jacob & Company, about six months after plaintiff had presented its appeal in Washington, as the maximum amount of taxes which defendant might be liable to pay, and, taking the reserve as the basis of the claim of the government and the refund of taxes, defendant sub-

mits a total of $17,803.77, stating the amount paid the government and $800 paid the attorney who worked with plaintiff in the matter, and $2,000 paid plaintiff. There are 30 exhibits, letters and statements.

The arbitrator called for additional information which was furnished in two letters submitted as exhibits referring to expenses. The documents referred to constituted all the evidence submitted or offered by either party. They were the sole basis of the decision of the arbitrator. Neither party, at any time prior to the decision, offered to produce further testimony or asked for oral argument. The arbitrator assumed that the statement and exhibits submitted constituted the completed cases of the parties, and after consideration thereof, from August 24 to November 21, he held that the plaintiff was entitled to an additional payment of $720.04, and sent a copy of the decision to both parties. Defendant paid the arbitrator his half of the fee and tendered the amount of the award to plaintiff, which the latter refused to accept.

The complaint attacks the award as unconscionable and void, substantially upon the following grounds: First, the arbitrator failed, refused and neglected to take an oath faithfully to perform the duties of his office; second, that he failed, refused and neglected to appoint a place and time for hearing the testimony, although specifically requested so to do; third, on or about August 24, 1927, plaintiff made a written demand for a joint hearing of the parties, and that same was ignored; fourth, that no opportunity was afforded plaintiff to appear and present testimony and was misled by the arbitrator; fifth, that the award is wholly unsupported by any testimony, but, on the contrary, is founded entirely upon unwarranted inferences and assumption of both law and fact.

Defendant, upon appeal, assigns the following errors: First, that the amended complaint does not state facts sufficient to constitute a cause of suit to set aside an award; second, that the court erred in setting aside the award and entering judgment for plaintiff. We will consider these assignments together.

On June 17, 1927, Mr. Whitfield, on behalf of plaintiff, wrote the arbitrator, Mr. Frank L. Shull, in effect, that immediately on advice from him that he was ready to receive evidence plaintiff would submit his case. After the letter of William Whitfield on August 11, 1927, urging the arbitrator to have defendant submit his case, on August 24, Frank L. Shull, the arbitrator, wrote to plaintiff's firm asking plaintiff to submit "brief covering case." The arbitrator fixed October 4, 1927, as the date and asked each party for a conference. Mr. Whitfield intended to appear for plaintiff, but was detained, and Mr. Payne was notified and the meeting was called off. There was no intimation made to the arbitrator that either party desired to submit any further testimony or make any argument in the matter. In attempting to arrive at a settlement, Mr. Payne and Mr. Jacob had engendered some ill-feeling between themselves and Mr. Whitfield indicated to the arbitrator that it would not be wise to have Mr. Payne and Mr. Jacob appear before him at the same time. The arbitrator fully understood, as he testifies, that unless there was a misunderstanding as to some matter, that there would be no further submission.

On November 21, 1927, the arbitrator made his findings and decision, in substance, as follows:

"November 21, 1927. Whitfield, Whitcomb & Company, Whitfield, Jacob & Company, Portland, Oregon, Pacific Export Lumber Company, Portland, Oregon.

"Gentlemen: There has been referred to the undersigned by Pacific Export Lumber Company on the one hand, and Whitfield, Whitcomb & Company and Whitfield, Jacob & Company on the other, a dispute growing out of a claim for additional compensation by the last named for services in securing for Pacific Export Lumber Company a reduction of income and profit tax for the years 1917-18-19.

"It is claimed by the Pacific Export Lumber Company that payment in full has already been made. Whitfield, Jacob & Company make claim for additional compensation in the amount of $3,493.14.

"On or about August 24, 1927, the parties at interest submitted briefs with exhibits in support of their claims. A careful study and analysis of the briefs submitted discloses a general agreement as to the facts. These appear to be as follows:

"* * * There was no agreement as to compensation. * * * These additional taxes resulted from disallowance of officers' salaries, of losses charged off and of expense items and depreciation.

"Whitfield, Whitcomb & Company in their letter of August 3, 1921, report to the Lumber Company that as to the tax of $5563.23 for 1917, recommended by Northrup, that, except for such credits as may be found for later years, it will be subject to payment. That as to the tax of $19,764.10 for 1918 they were confident that the full amount will be abatable. This on the basis of the same percentage of net income as that paid by representative concerns. That as to the tax of $4,031.16 for 1919 this would be eliminated entirely.

"* * * Whitfield, Whitcomb & Company were able to have practically the entire amount of tax set aside * * ·*. A careful analysis of the evidence convinces me that a real service was performed and that a substantial saving was accomplished by Whitfield, Whitcomb & Company.

"In determining a fair compensation for the services rendered, I find it impossible under the evidence to arrive at this on the basis of the *amount saved*. If

this basis could be used, evidence of charges for similar work would have considerable bearing. It appears, however, that in August, 1922, correspondence passed between the parties to this arbitration on the subject of work performed and charges therefor, and this seems to me to make necessary a different method of arriving at a proper charge than on the basis of amount saved.

"On August 7, 1922, Whitfield, Whitcomb & Company rendered bill for $850 to apply on account and $58.90 'balance of expense.' $1,000 had already been paid on July 23, 1921.

"On August 8, 1922, Pacific Export Lumber Company wrote asking, 'How you determine the amount of the charge, and what further expenses you estimate in connection with this particular commission.'

"On August 10, 1922, Whitfield, Whitcomb & Company replied, 'The charges up to the present time have been made upon the basis of our usual per diem rates for actual time expended on your work.' 'Replying to your request for a statement of probable further expense, beg to state it is impossible to give you any idea of this, but all of the detail work has heretofore been done and we do not anticipate it will be necessary to spend a great deal more time.'

"It seems reasonable to conclude that the charges up to this time covered all work so far performed and expenses incurred, and that the work necessary in the future would be of minor importance. These charges were, fees of $1,500 and expenses $408.90.

"While the detail work was largely done prior to August, 1922, it is apparent from the evidence submitted, that after that date, and through the years 1923-24-25, Whitfield, Whitcomb & Company made appearance before the departments in Washington, D. C., on several occasions and prepared appeals and protests in behalf of the Lumber Company in order to bring the case to a final conclusion. It is difficult to arrive at a fair charge for this service, but taking into consideration the fact that the preliminary work had

already been done, and that the work during the period in question was in the nature of following up and concluding the case, I am of the opinion that a reasonable charge for this service would be $500, with expenses, $311.14 ($720.04 less $408.90).

"The account would, therefore, stand as follows:

| | |
|---|---|
| Fees to August 7, 1922 | $1,500.00 |
| Expense | 408.90 |
| Fees after August 7, 1922 | 500.00 |
| Expense | 311.14 |
| | $2,720.04 |

| Less payments | | |
|---|---|---|
| 7-23-21 | $1,000 | |
| 8-19-22 | 500 | |
| 8-19-24 | 500 | 2,000.00 |
| Amount due | | $ 720.04 |

"The decision will be that there is due and owing Whitfield, Whitcomb & Company and their successors, Whitfield, Jacob & Company by Pacific Export Lumber Company the sum of $720.04. The circumstances of the case do not justify an interest charge.

"Under the arbitration agreement each party is to pay one-half the arbitrator's fee which is set at $350, one-half to be paid by each party to the agreement. Frank L. Shull."

On December 10, 1927, Whitfield, Jacob & Company addressed a letter to Mr. Shull, the arbitrator, refusing to consider the arbitration as settled, "not because we have the slightest question of your good and impartial judgment, but because we know you did not touch bottom in the consideration of the facts of the case." The attorney for plaintiff, at the time of the trial, states that he does not question the arbitrator's fairness in the matter.

It will be noticed from the arbitration agreement that it does not specify the manner in which the parties will submit their respective sides of the controversy. Neither party employed legal counsel in the matter. It seems that plaintiff was entirely satisfied with the proceedings before the arbitrator until after the award was made. After the date set for the conference, October 4, 1927, to be held in the Commerce building, when the parties failed to get together, the arbitrator informed them that the matter to which he desired to call their attention "wasn't of importance, wasn't necessary for them to come again." And neither of them asked for any further hearing.

At the trial in the circuit court, a large amount of testimony, about 475 pages of typewritten matter, was taken and all of the exhibits submitted to the arbitrator were introduced, and several other exhibits consisting of statements of the United States Treasury Department, and additional correspondence between the parties. Our attention has not been called to anything in addition to what was submitted to the arbitrator that, in our opinion, would have aided him in arriving at a conclusion in the controversy. We, therefore, conclude that the submission to the arbitrator was fully made. The proceedings were not conducted as if they had been in court. The plaintiff complains that neither party received a copy of the other's statement. It does not appear that either party requested information as to what the other filed, or examined the record before the arbitrator. Both seemed to know what their opponent claimed. The matter had been much discussed. The claim of plaintiff, that all that was submitted to the arbitrator was preliminary to serve as pleadings, cannot be upheld. Nothing in the arbitration proceed-

ings indicates undue haste or that everything pertinent to the matter was not examined and considered by the arbitrator.

■ Plaintiff complains that the defendant was notified of his intention to render a decision and the plaintiff was not. This on account of a letter of November 7, 1927, from the arbitrator to the defendant, acknowledging defendant's letter of October 26, indicating a wish to fully understand the purport of the same and stating:

"Incidentally, I will be in a position to render a decision on the case within the next few days, providing your letter of the 26th does not make it impossible. You state that 'we, therefore, consider it your bounden duty to dismiss the claim for further compensation and, at the same time, demand of them an accounting and properly certified vouchers supporting the payments already made which cover traveling expense, hotel expenses, time spent on working over details of our balance sheets, etc.' You also say that it is 'set forth as a counterclaim, without prejudice to our rights to avail ourselves of legal remedy in case such accounting is not forthcoming in due course'."

And calling the defendant's attention to the fact that if it was the purpose that the decision should not be final, that this fact should be presented to the other parties before decision was rendered, and that by the agreement both parties would be bound by the decision. Afterwards the defendant, by letter, authorized the arbitrator to delete from its letter the matter above quoted. We are unable to see any reason why the plaintiff should criticize or complain of the letter of November 7, 1927, as it had the effect of removing an impediment to the decision. The plaintiff, sometime before that, urged the arbitration proceedings to be forwarded. The letter complained of, on its face, shows

a fair intention on the part of the arbitrator to carry out the arbitration in accordance with the agreement of the parties. It is not subject to criticism, but to commendation. Plaintiff could in no way be injured thereby. It cannot serve as a pretext for setting the award aside.

■ It is not necessary for the arbitrator, after·all the testimony has been heard, to give notice where and when he will consider the evidence and decide on the award: 2 R. C. L. 379, § 25. An arbitrator is not bound to follow the strict rules of law unless it be a condition of the submission that he shall do so: 2 R. C. L. 375, § 22.

■ The parties to an arbitration should have time and opportunity to present their case in the absence of an agreement to the contrary. We see no reason why both parties can not submit their statements and evidence in writing, as they did in the present case. The plaintiff had ample opportunity and did fully submit his statement, evidence, affidavits and argument in writing. The calling of witnesses was not suggested or apparently necessary. No further testimony was tendered: 2 R. C. L. 378, § 24.

■ The closing part of plaintiff's statement reads, in part: "and request is made for a joint hearing of the interested parties hereto before the arbitrator in order that any misunderstanding with respect to the facts in the case may be clarified." The arbitrator, as far as he was able, carried out the request of plaintiff and set a time for a conference or hearing of the parties. Mr. Whitfield was the moving spirit in representing the plaintiff before the arbitrator, who was fully justified in taking the advice of Mr. Whitfield and in not requiring Mr. Jacob and Mr. Payne to meet together

on account of ill-feeling between them. The submission of the case in writing, and there being nothing to be clarified except what was requested by the arbitrator in regard to some items. of expense, fully complied with the request of the plaintiff. Mr. Shull states that these items were clarified so he did not think a joint hearing was necessary. Mr. Jacob testified as follows:

"Q. I call your attention, Mr. Jacob, to plaintiff's exhibits A-10 and A-11, which appears to be an unsigned letter—I assume that you received that from Mr. Shull?

"A. Yes, sir, I did.

"Q. I notice that refers to an item of $58.90. Were the details with respect to that expense item submitted in your original submission to Mr. Shull?

"A. No, it was not. The item was mentioned in a letter that had been written to the defendant corporation sometime during the progress of this work, but the detail—this amount was included in our statement for expenses.

"Q. Did that appear upon any bill that you sent to the defendant, Pacific Export Lumber Company?

"A. Yes, sir; a statement sent in August, I believe it was, 1922."

Anent the submission of the case, Mr. Whitfield, upon cross-examination, testified as follows:

"Q. Didn't Mr. Payne tell you that if this was submitted for arbitration it would be a flat submission, without attorneys, that Mr. Jacob was a lawyer and Mr. Payne didn't want to hire a lawyer to go up against Mr. Jacob, and the submission would be made to some man you could mutually agree upon, and decide the controversy without interference of attorneys?

"A. Mr. Payne was hopeful, I remember, or expressed the desire that he should not have to submit to an oral arbitration."

Mr. Jacob testified on cross-examination:

"Q. When did you make up the statement for submission to Mr. Shull?

"A. Sometime in the latter part of '26 or early in '27—no, it was sometime during '27; it must have been because the submission was made on August 24.

"Q. Then the contract for arbitration was entered into—

"A. In November, 1926.

"Q. You had from that time until August, 1927, to prepare your statement and exhibit of facts to Mr. Shull?

"A. Yes, I did.

"Q. You had all the papers then that you have now and that your counsel has introduced into this case, did you not?

"A. Yes, we did."

No newly discovered evidence was submitted or suggested. This additional evidence introduced in the circuit court, in addition to that before the arbitrator, is, at most, merely cumulative. It would only tend to confuse the issues.

There was no failure of the arbitrator to call a meeting or give notice thereof or to hear any evidence the parties saw fit to submit. The eight affidavits of plaintiff's witnesses were not in the form of depositions, but they contained the facts and fully presented the matters referred to by experienced experts. There is no foundation for plaintiff's claim that he was not granted a fair opportunity to be heard and present his evidence before the arbitrator. No fraud is alleged by plaintiff.

The contention of the plaintiff, that the arbitrator "undertook to determine the value of various services performed" for defendant without first hearing

plaintiff's evidence as to the character and reasonable value thereof, is not sustained by the record. Plaintiff made his claim in this respect very forceful. He stated:

"(3) Value of Service—As Tax Counselors, well trained in the income tax law, having had long and close familiarity with all the government's requirements in Portland and in Washington, D. C., and a close friendship with many of the Officials, we performed an efficient and valuable service for the Pacific Export Lumber Company, which is evidenced by an actual cash saving to the company of large amounts."

He gives the items of the account and reiterates and argues that they are reasonable. Five expert accountants and tax experts stated, under oath, in writing, that they considered a reasonable fee for plaintiff's services from $5,000 to $8,000. In summing up his case, plaintiff says:

"(8) We claim that the fees billed are exceptionally fair and reasonable, and justified by results accomplished for the client."

Evidently the plaintiff, who is an attorney, submitted the case to the arbitrator in much the same manner as he submitted the tax matters of defendant to the Commissioner of Internal Revenue. We find nothing to indicate that plaintiff had not fully submitted all testimony and matters to the arbitrator that he deemed necessary to support his claim. Mr. Shull's testimony that neither party ever requested an oral hearing for the introduction of further evidence or for any other purpose is wholly uncontradicted.

Plaintiff complains on account of the recital contained in the award to the effect that the arbitrator found that under the evidence it was impossible to arrive at a fair compensation on the basis of the

amount saved to defendants. Undoubtedly, plaintiff, by the letter written in August, 1922, in stating what they had done and what they expected to do, led the defendant to believe that they were charging for their services on the basis of the amount of work performed and the expenses incurred. If there was an erroneous impression in this respect it was the fault of plaintiff in impressing upon his client in advance the thought that the compensation to be paid would be light. Unquestionably, the amount saved to defendant did have an influence upon the arbitrator in fixing the amount of the award, although it did not constitute the entire basis. That is shown by the recital therein, thus:

"A careful analysis of the evidence convinces me that a real service was performed and that a substantial saving was accomplished by Whitfield, Whitcomb & Company."

Plaintiff claims that the requested explanation in regard to expenses had been given to defendant in August, 1922. Therefore, there was no occasion for the arbitrator to call for such explanation. Nevertheless it shows, together with many other earmarks, the painstaking care and consideration given by the arbitrator to all the details of the case.

■ Plaintiff claims that the award should be set aside, under the rule found in the case of *Sisk v. Garey*, 27 Md. 401, which reads thus:

"Where certain matters were submitted to arbitration, and the parties appeared before the arbitrators, and each filed a statement setting forth his charges, demands and claims against the other, and after the hearing was closed, the arbitrators received a statement from one of the parties, containing new and different items of claim from any presented at the hear-

ing, and without the knowledge of the other party, a Court of Equity will enjoin a suit at law upon the award, and set it aside.''

■ Jacob, an attorney, set the pace by writing letters to the arbitrator, one of which was in regard to expenses. Defendant also wrote the umpire in regard to vouchers for expenses and then withdrew the demand. These letters, as we infer, were before the case was finally submitted to the umpire and the letters seemed to have taken the place of briefs. As this correspondence was in regard to expenses, it should be borne in mind that all expenses claimed by plaintiff were allowed by the arbitrator. The matter was presented to the arbitrator in writing and in a manner chosen by the parties without objection of either. There was no misconduct on the part of the arbitrator. The case does not come within the quoted rule. No new items of claim were presented in the correspondence referred to. The parties were given a full opportunity to present their respective sides of the case. Plaintiff having presented his case in writing, containing the sworn statements of his witnesses, and in not offering any other testimony for so long a time, the arbitrator was warranted in believing, as he did, that the case was fully presented. Indeed, it seems that plaintiff had no further material evidence to be produced.

Much is said about the work done after August 10, 1922. Plaintiff, in his statement to the arbitrator, explained the matter fully, in part thus:

''While it was thought at that time that there would not be a great deal more work to be done, the later attitude of the Department and its reversals made necessary the presentation of this matter in Washington, D. C., on four different trips there *after that time,*

and on these trips we appeared before the Department to present evidence and argue the taxpayer's rights on the following dates: April 14, 1923; May 3, 1923; April 3, 1924; April 4, 1924; April 25, 1924; May 6, 1924; May 19, 1925; May 22, 1925; Sept. 25, 1925.''

He then detailed the several appearances in the tax matter. It was for the arbitrator to find whether the plaintiff made a mistake when writing defendant on August 10, 1922, as he claims, or changed his mind as to the charges to be made for his work.

 Frank Shull was selected as arbitrator, as possessing peculiar fitness and qualifications, and the parties intended to rely upon his skill and knowledge. He was not obliged to receive testimony other than the statements and exhibits of the parties delivered to him when there was no request by either party to present such testimony: *Stemmer v. Ins. Co.*, 33 Or. 65, 78, 79 (49 P. 588, 52 P. 498) ; *Bennett v. Bennett*, 25 Conn. 66. Testimony must be offered before it can be excluded and the offer must be a distinct presentation upon a concrete point and not a mere general expression of willingness, duty or desire to produce the testimony: *Cohn v. Wemme*, 47 Or. 146 (81 P. 981; 8 Ann. Cas. 508) ; 2 R. C. L. 378, § 24, and 395, § 37. Awards are favored in law and every presumption is in favor of their fairness. The burden of proof is on the party seeking to set them aside, and to do so by clear and strong proof : 5 Enc. of Law & Practice, 225, 229; *Gerdetz v. Central Or. Irr. Co.*, 83 Or. 576 (163 P. 980) ; 2 R. C. L. 389, § 34.

 All of the exhibits introduced by plaintiff at the trial before the court were in his possession at the time of the submission to the arbitrator and could have been included in the evidence delivered to the arbitrator if the plaintiff had deemed it necessary to submit

additional details. Plaintiff's failure to introduce his other exhibits excludes imputation of unfairness to the arbitrator: 5 C. J. 192, § 487; 2 R. C. L. 346, § 32; *Hooper v. Pennick,* 102 Or. 382, 387 (202 P. 743).

■ Every matter which was decided or could have been presented to the arbitrator and decided in an award comes within the rule of res judicata: *Hooper v. Pennick,* supra; *First Nat. Bank v. Buckland,* 130 Or. 364 (280 P. 331, 332).

■ The award expresses the unbiased conclusion intended by the arbitrator in a fair, plain and concise manner and is not open to attack on the ground of mistake: *O.-W. R. & N. Co. v. Spokane, etc., R. Co.,* 83 Or. 528, 541 (163 P. 600, 163 P. 989, Ann. Cas. 1918C, 991); 2 Pom. Equity Juris. (4th Ed.), § 871, p. 1797.

■ It is not the province of the courts to substitute their judgment for that of an honest, impartial and competent arbitrator chosen by the parties, who agreed unconditionally to abide by his decision: 2 R. C. L., § 34, p. 389; Note, 47 L. R. A. (N. S.), pp. 445, 446; *Burchell v. Marsh,* 58 U. S. 344 (15 L. Ed. 96); 4 Rose's Notes, (Rev. Ed.) 915; 1 Enc. of Ev. 978; 5 C. J. 179. Neither a mistake of fact or law vitiates an award: 5 Enc. of Law & Practice, 226-229, and cases above cited.

The plaintiff speculated and took a chance on the outcome of the award. He is disappointed with the amount of the award. He has no grounds for complaining that he was prevented from introducing all of his testimony. Plaintiff has not shown that the award is tainted with fraud, partiality or misconduct. See *Stemmer v. Ins. Co.,* supra.

In *Gerdetz v. Central Oregon Irri. Co.*, supra, the court quotes from 5 C. J. 184, § 469:

"In case the submission is in general terms, however different the judgment of the arbitrators may be upon the law of the case from the opinion entertained by the court, if the arbitrators have acted honestly, the award will not be set aside."

The substance of plaintiff's complaint is that the arbitrator did not award him all that he claimed. In 2 R. C. L. 386, § 32, quoted in *Hooper v. Pennick*, supra, we read:

"The award of arbitrators, acting within the scope of their authority, determines the rights of the parties as effectually as a judgment secured by legal procedure, and is as binding as a judgment, until it is regularly set aside or its validity questioned in a proper manner. Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy. And this has been held true even in a case in which one of the parties neglected to present portions of his claim. He had his chance, and, after the award, was concluded thereby, and could secure no relief."

█ The presentation of defendant did not materially differ from that of plaintiff as to the facts. They diverge in their arguments and conclusions. The controversy turned mainly on the amount and value of the services rendered by plaintiff. The arbitrator made the award after a full, careful and unbiased consideration of the facts submitted in great detail by plaintiff and by defendant in a concise, businesslike way, not in the way an attorney would. The decision

contains intrinsic evidence that the award in no way fails to express the honest decision of the arbitrator. The plantiff has wholly failed to impeach the award.

Plaintiff took a cross-appeal, but that presents no new question and need not be further considered.

The decree of the lower court setting aside and annulling the award made by the arbitrator will be reversed and a decree is directed to be entered in accordance with the award, $720.04. Each of the parties will pay their own costs and disbursements in the circuit court and in this court.

BROWN, BELT and CAMPBELL, JJ., concur.