Argued and submitted December 12, 1988, reversed and remanded in part; otherwise affirmed May 3, reconsideration denied August 25, petition for review denied October 26, 1989 (308 Or 465)

## ANDREWS,
*Appellant,*

*v.*

## MAY DEPARTMENT STORES,
dba Meier & Frank Company,
*Respondent.*

(A870201021; CA A48384)

773 P2d 1324

Stephen E. Lawrence, Portland, argued the cause for appellant. On the brief was Walter L. Crow, Jr., Portland.

Barrie J. Herbold, Portland, argued the cause for respondent. With her on the brief were Christine T. Herrick and Markowitz, Herbold, Stafford & Glade, P.C., Portland.

Before Joseph, Chief Judge, and Graber and Riggs, Judges.

GRABER, J.

## GRABER, J.

Plaintiff sued her former employer on two theories: statutory discrimination (under ORS 659.410, ORS 659.415, ORS 659.420, and ORS 659.425) and common law wrongful discharge. The trial court granted summary judgment to defendant. Plaintiff appeals, and we reverse and remand on the statutory claim.

While employed by defendant, plaintiff was a member of the Warehousemen's Local No. 206 (Union). At the material times, defendant and Union were parties to a collective bargaining agreement that included three provisions relevant here. Section 2-1 of the agreement provided:

> "Both Company and Union agree to comply with applicable laws and regulations regarding discrimination against any employee or applicant for employment because of such person's race, religion, color, national origin, physical condition, sex or age."

The senority article included this clause:

> "6-5.   An employee shall lose all previous seniority credit if he:
>
> "* * * * *
>
> "(b)   is discharged for cause;
>
> "* * * * *
>
> "(e)   is laid off for a period of more than twelve (12) months;
>
> "(f)   No employee who has acquired seniority shall lose seniority by reason of sickness or injury, not to exceed one (1) year, unless further extended by mutual agreement."

The agreement also contained a mandatory grievance procedure[1] culminating in "final and binding" arbitration.

Plaintiff began working at defendant's warehouse in 1972. In 1976, she was injured on the job when some boxes fell on her arm. From 1976 to 1980, plaintiff was intermittently absent, due to pain that apparently resulted from the accident

---

[1] Section 7-1 of the agreement provided, in part:

"It is the intention of both Parties that all disputes concerning the interpretation of this Agreement shall be settled according to provisions of the Grievance Procedure or through binding arbitration."

at work, for periods ranging from two weeks to several months. Defendant transferred her to a series of jobs, each of which involved progressively less strenuous tasks, in an apparent attempt to find an assignment that did not cause pain. In 1981, the Workers' Compensation Board awarded plaintiff 30 percent permanent partial disability for the 1976 injury.

Plaintiff's pain persisted. In 1982, she was absent from work 12 days. She missed 38 days in 1983. In February and March, 1984, plaintiff again missed work frequently. In April, 1984, plaintiff saw Dr. Howell, defendant's "company physician." He, to quote the arbitrator,

"concluded that [plaintiff] had a psychogenic pain disorder which prevented her from performing her assigned duties without experiencing an increase in pain and that she was not medically qualified to perform her job duties."

On the basis of Howell's medical report, defendant asked for, and plaintiff agreed to, a medical leave of absence.

During the leave, plaintiff saw Dr. Brett, a neurosurgeon. On February 8, 1985, Brett wrote a "work release" for plaintiff, which provided in part:

"[Plaintiff] is released to light or clerical work which does not entail any repetitive bending, lifting or stooping and does not require her to lift more than 25 pounds or sit or stand consecutively for more than four hours."

Plaintiff sent the work release to defendant.

On February 18, 1985, Howell again examined plaintiff and reviewed Brett's medical reports. Howell concluded that plaintiff would probably injure herself, suffer an increase in pain and, as a result, miss more time from work, if defendant reinstated her. Defendant denied plaintiff's request to return to work. Pursuant to Paragraph 6-5 of the collective bargaining agreement, which is excerpted above, defendant discharged plaintiff on April 10, 1985, one year and one day after her medical leave began.

Union filed a grievance. Defendant denied it, and the matter went to arbitration. The original grievance form submitted by plaintiff alleged that defendant had violated Paragraph 6-5(f) of the collective bargaining agreement. Union's submission to the arbitrator stated the issue this way:

"Did the Company properly refuse to reinstate the Grievant in February 1985, and at all times thereafter under the applicable labor agreement?"

In essence, the grievance charged that defendant had violated the contract when it discriminated against plaintiff due to her physical condition. Before the arbitrator, the trial court, and this court, the parties have addressed the discrimination issue and treated it as part of the grievance. The arbitrator fully addressed both the discrimination and termination issues. Both Union and defendant were represented by counsel in the grievance proceeding.

The arbitrator, an attorney selected by defendant and Union, issued a lengthy and well-written opinion and order denying the grievance. He thoroughly reviewed all of the evidence and arguments and found these facts, among others: (1) Since 1983, plaintiff has had "persistent pain and a psychological overlay with respect to treatment." (2) Had plaintiff returned to work, she would have continued to be absent from work frequently. The arbitrator concluded that defendant "was justified in terminating [plaintiff's] employment following the one year medical leave of absence" and that "[t]here is no evidence that [defendant] discriminated against [plaintiff] based on her physical condition."

The arbitrator issued his opinion and order on July 30, 1986. Plaintiff had also filed a complaint with the Bureau of Labor and Industries, charging defendant with discrimination in violation of ORS chapter 659. On December 3, 1986, the Bureau found no substantial evidence to support plaintiff's allegations of discrimination and issued a "Private Right of Action Notice." *See* ORS 659.095.

Plaintiff then filed this action. Defendant moved for summary judgment on the ground, *inter alia,* that "there is an arbitration award which bars plaintiff from relitigating her claims in this proceeding." The trial court granted summary judgment on that ground. On appeal, plaintiff argues that her complaint asserts statutory rights that are independent of the collective bargaining agreement and that, therefore, the

arbitration proceeding should not bar them.[2] She relies entirely on the principles announced in *Alexander v. Gardner-Denver Company,* 415 US 36, 94 S Ct 1011, 39 L Ed 2d 147 (1974), some of which the Oregon Supreme Court adopted in *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 87, 611 P2d 281 (1980). Defendant contends that the arbitration precludes the present claim, in whole or in part. Neither *Vaughn* nor any other previous Oregon case addresses that issue directly.

In *Alexander v. Gardner-Denver Company, supra,* as here, the collective bargaining agreement contained a non-discrimination clause and a grievance procedure leading to final and binding arbitration. The plaintiff claimed racial discrimination in his grievance, and the arbitrator found that he had been discharged for just charge. *Alexander v. Gardner-Denver, supra,* 415 US at 42. The plaintiff then sued his employer in federal district court under 42 USC §§ 2000e *et seq.* (Title VII). The district court dismissed the complaint. It held that, because he had elected the remedy of arbitration, the plaintiff was bound by the arbitrator's decision and was thereby precluded from suing his employer under Title VII.

The Court of Appeals affirmed, but the United States Supreme Court reversed. It reasoned that an employe who submits a grievance to arbitration agrees only to arbitrate contractual rights, not Title VII rights. In a Title VII proceeding, the employe asserts rights guaranteed by Congress. 415 US at 50. The Supreme Court held that the district court should consider the plaintiff's claim *de novo* and that principles of waiver and election of remedies do not bar a Title VII action after arbitration under a collective bargaining agreement. In note 10, the court wrote:

"The policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally

---

[2] Plaintiff does not argue that the trial court erred in granting summary judgment to defendant on her common law claim. Even if her assignment of error were read to encompass that assertion, it is without merit. *Embry v. Pac. Stationery and Printing Co.,* 62 Or App 113, 659 P2d 436 (1983).

applicable to the doctrines of *res judicata* and collateral estoppel." 415 US at 49.[3]

In *Vaughn v. Pacific Northwest Bell Telephone, supra,* the plaintiff worked under a collective bargaining agreement and was discharged. She commenced her ORS chapter 659 action before her final grievance hearing was held. Her former employer argued that the collective bargaining agreement provided her exclusive remedy or that, at least, she was required to exhaust that remedy before bringing an action. Citing *Alexander v. Gardner-Denver, supra,* and adopting its reasoning, the Supreme Court rejected both arguments. 289 Or at 86-89. The court noted that ORS chapter 659, like Title VII, is

"intended to afford an alternative or to supplement existing remedies in a collective bargaining agreement." 289 Or at 87.

Although they suggested a direction, neither *Gardner-Denver* nor *Vaughn* expressly held that collateral estoppel and *res judicata* do not apply. Federal courts, following the *dictum* in footnote 10 of *Gardner-Denver,* have refused to apply either *res judicata* or collateral estoppel and have instead admitted an arbitrator's award as evidence and given it "great" or "some" weight.[4] *See, e.g., Green v. United States*

---

[3] In *McDonald v. West Branch,* 466 U.S. 284, 292, 104 S Ct 1799, 80 L Ed 2d 302 (1984), the court held that

"in a § 1983 action a federal court should not afford *res judicata* or collateral estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement." (Footnote omitted.)

*McDonald* relied on *Alexander v. Gardner-Denver, supra,* and on *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 US 728, 101 S Ct 1437, 67 L Ed 2d 641 (1981), in which the court held that an arbitration award did not preclude a later action under the Fair Labor Standards Act.

[4] Note 21 in *Gardner-Denver* says:

"We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." 415 US at 60.

Claims under Title VII are equitable, so trial is to the court. *Lehman v. Nakshian,* 453 US 156, 164, 101 S Ct 2698, 69 L Ed 2d 548 (1981). Plaintiffs' claims here are triable to a jury. ORS 659.121(2).

*Steel Corp.,* 481 F Supp 295, 302 (ED Pa 1979) (arbitrator's decision given "great weight"); *Burroughs v. Marathon Oil Co.,* 446 F Supp 633, 636 (ED Mich 1978) (arbitrator's decision given "some weight"); *compare Becton v. Detroit Terminal of Consol. Freightways,* 687 F2d 140 (6th Cir 1982), *cert den* 460 US 1040 (1983) (reversing part of district court's decision that gave preclusive effect to arbitrator's award).

The court observed in *Vaughn* that ORS chapter 659 is patterned after Title VII, so federal precedent is persuasive authority on the *res judicata* and collateral estoppel questions. *Vaughn* concluded that

"the existence of [ORS chapter 659] providing a personal cause of action is sufficient to override the preexisting policy favoring exclusivity of * * * collective bargaining agreements." 289 Or at 87.

That passage suggests that the policy favoring finality of adjudications and factual findings likewise should bow to ORS chapter 659.

In arguing that *res judicata* or collateral estoppel applies, defendant relies on *Wagner v. Columbia Hospital Dist.,* 259 Or 15, 485 P2d 421 (1971), and *Jacob v. Pacific Export Lbr. Co.,* 136 Or 622, 297 P 848 (1931); *see also Rueda v. Union Pacific Railroad Co.,* 180 Or 133, 175 P2d 778 (1946). Those cases do not control, because each involved a dispute over private rights. They stand for the proposition that an arbitration award is conclusive between the parties as to all private disputes submitted to the arbitrator, but they did not involve a statutory claim.

Defendant also cites *Corey v. Avco-Lycoming Division, AVCO Corporation,* 163 Conn 309, 307 A2d 155 (1972), *cert den* 409 US 1116 (1973), which is more helpful to its position. However, it is no longer persuasive authority. *Corey* relied on *Dewey v. Reynolds Metals Co.* 429 F2d 324 (6th Cir 1970), *affirmed by an equally divided court,* 402 US 689, 91 S Ct 2186, 29 L Ed 2d 267 (1971). *Dewey,* in turn, was strongly criticized and, in effect, overturned by *Alexander v. Gardner-Denver, supra,* 415 US at 49 n 10.[5]

---

[5] Defendant also relies on several cases from other states. *Tucker v. General Tel. Co. of SE,* 50 NC App 112, 272 SE2d 911 (1980), is inapposite, because it concerned a contract claim but not a statutory claim. *Cooper v. Yellow Freight System, Inc.,* 589 SW2d 643 (Mo App 1979), and *Thompson v. Monsanto Co.,* 559 SW2d 873 (Tex Ct Civ App 1977), are closer to the mark, because they apply *res judicata* and collateral estoppel from labor arbitration findings to statutory proceedings. However, to the extent that they might otherwise apply here, they are inconsistent with *Vaughn v. Pacific Northwest Bell Telephone, supra.*

Were we free to write on a clean slate,[6] our analysis of collateral estoppel might reach a different result. However, because of *Vaughn,* we hold that the arbitration award did not bar plaintiff's claims under ORS chapter 659 on principles of *res judicata* and that the parties are not collaterally estopped from relitigating facts that were decided in arbitration.[7] We reverse and remand on the ORS chapter 659 claim but affirm on the common law wrongful discharge claim.

Reversed and remanded on ORS chapter 659 claim; otherwise affirmed.

---

[6] *See Chavez v. Boise Cascade Corporation,* 307 Or 632, 772 P2d 409 (1989).

[7] The parties are not barred from introducing the award as evidence, if it is otherwise admissible. *See* n 4, *supra.*