Argued and submitted December 16, 1994, reversed and remanded
February 22, 1995

George N. FARIS,
*Appellant,*

*v.*

GAMBLE, INC.,
an Oregon corporation,
dba ALPAC Corporation,
*Respondent.*

(9305-03025; CA A82720)

889 P2d 1363

Michael R. Dehner argued the cause and filed the briefs for appellant.

Charles F. Hinkle argued the cause for respondent. With him on the brief were Jerome L. Rubin, Leslie K. Bonney, Tracy J. White and Stoel Rives Boley Jones & Grey.

George P. Fisher filed a brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Deits, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff brought this action against his employer, alleging unlawful employment practices under ORS chapter 659.[1] The trial court granted defendant's motion for summary judgment on the ground that prior binding arbitration between the parties precluded plaintiff from litigating the statutory issues. We review to determine whether defendant is entitled to judgment as a matter of law, *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993), and reverse.

Defendant employed plaintiff in its soft drink bottling business beginning in 1976. Plaintiff's most recent position was "vendor-installer," which entails the repair and delivery of vending machines weighing 200 to 800 pounds. Throughout his employment, plaintiff was a member of Teamsters Local Union No. 162 (union), which was party to a collective bargaining agreement (CBA) governing the terms and conditions of plaintiff's employment with defendant. The CBA contains, in relevant part: (1) a seniority provision that allows an employee to retain seniority rights for 18 months for absence due to a work-related injury; (2) an Equal Employment Opportunity provision that declares an intention to comply with all federal and state equal opportunity laws and specifically prohibits discrimination on the basis of several classifications; and (3) a mandatory grievance procedure culminating in binding arbitration.[2]

---

[1] Plaintiff alleged violations of ORS 659.410 (prohibiting discrimination against worker for applying for workers' compensation benefits), ORS 659.415 (requiring reinstatement of injured worker into former position), ORS 659.420 (requiring reemployment into available and suitable job for disabled worker), and ORS 659.425 (prohibiting discrimination against disabled persons).

[2] The CBA provides, in part:

"ARTICLE 9

"Seniority, Layoff and Rehire

"* * * * *

"9.4 An employee who has been absent from work as a result of non-job related illness or accident shall retain their seniority rights for a period of twelve (12) months, or in the case of absence due to job-related illness or accident for a period of eighteen (18) months, from the beginning of such absence; provided, however, that upon return to work they must be able to perform all of the regular assigned duties of the classification which was their regular classification at the time that such absence began. Seniority may be retained beyond twelve (12) months absence by mutual agreement between the Employer and the Union. Seniority shall be broken by twelve (12) months' layoff, discharge or voluntary quits.

"* * * * *

In 1983, plaintiff suffered a compensable back injury and was off work for about three weeks. He exacerbated that injury in 1988, but missed no work. In 1989, he suffered another work-related back injury. Despite medical treatment, disability leave and a light-duty work assignment, he took a medical leave of absence that began on April 23, 1990. Plaintiff received ongoing treatment and evaluation from several medical specialists and rehabilitation counselors until shortly before August 26, 1991, when his personal physician released him to return to his regular work with no restrictions. When plaintiff reported to work, however, he was sent home. Because his physician's release conflicted with all previous reports, defendant ordered an independent medical examination and scheduled a physical capacities evaluation by an occupational medical specialist to determine plaintiff's fitness for other available employment as a "merchandiser." Based on the results of those evaluations, defendant denied plaintiff reinstatement and reemployment.

On September 19, 1991, plaintiff filed a grievance with the union, alleging that he had been wrongfully denied reinstatement to his former position.[3] Under the CBA, plaintiff's seniority and, thus, his right to reinstatement, expired

---

"ARTICLE 18

"Violation of Agreement

"18.1 Should any difference arise as to the meaning, application, or interpretation of the express provisions of this Agreement, or company work rules, the following means of adjustment shall be utilized.

"* * * * *

"18.4 STEP III If the complaint or grievance is not settled * * * the Union and the Employer shall mutually choose a single arbitrator. * * * The decision of the arbitrator shall be final and binding on both parties.

"* * * * *

"ARTICLE 26

"Equal Employment Opportunity

"26.1 It is the continuing policy of both the Employer and the Union to comply with all Federal and State equal employment opportunity laws and to not discriminate against any employee because of race, color, sex, religion, age, or national origin."

[3] The union "Member's Grievance Report" completed by plaintiff explains the grievance as follows:

"I was released to go back to work by my medical doctor. I called [employer] on Mon. Aug. 26, 1991. [The personnel manager] was to call me back. I did not hear from her. So, I talked with my attorney and was told to show up for work the

on October 22, 1991, 18 months after his medical leave of absence began. The union's business representative sent a letter to defendant on December 20, 1991, demanding either that plaintiff be reinstated "immediately to his former position if available; and if not available, into a suitable position such as merchandising," or that binding arbitration take place under Step 3, Article 18, of the CBA.[4] In February, 1992, plaintiff filed a complaint with the Bureau of Labor and Industries (BOLI), alleging that "he was denied reinstatement due to his use of the Workers' Compensation system and/or his perceived disability," in violation of ORS 659.410, ORS 659.415, ORS 659.420 and ORS 659.425. Nearly a year later, BOLI issued an administrative finding that there was no substantial evidence to support plaintiff's allegation of unlawful employment practices under those statutes.

In the meantime, in August, 1992, plaintiff's grievance was submitted to arbitration to resolve the following stipulated issue:

> "Did the Employer properly refuse to place the Grievant into a merchandiser position following his request to return to work?"

The arbitrator found that the evidence "supported the conclusion that [plaintiff] was not physically capable of performing merchandiser work" as of October 22, 1991, when plaintiff's seniority lapsed. He decided, therefore, that "the Employer did not violate the [CBA]" and "properly refused to place [plaintiff] into a merchandiser position following his request to return to work." The arbitrator's opinion explained that his role was "to serve as a 'contract reader' * * * to interpret and apply [the CBA], not to enforce a statute," but noted that his responsibility under the CBA was

---

next morning. I did, and I was sent home [approximately] 45 minutes later. I called Wed. morning to [supervisor] saying I am ready to come back any time and to reaffirm that it was [employer's] idea to send me home and not my idea.

"My attorney send [sic] [employer] and [its insurance carrier] a demand letter to reinstate me back to work and as of now 9/19/91 I have not heard back.

"I am requesting my former job and all wages and benefits from the time I was released to return back to work by my doctor."

[4] The union's letter also stated that "under Oregon State [sic] Statute 659.415 [plaintiff] is entitled to reinstatement immediately."

to "render a decision that is not inconsistent with applicable law."

Plaintiff filed this civil action in May, 1993, to enforce his statutory rights under ORS chapter 659. The trial court granted defendant's motion for summary judgment, despite its acknowledgement that *Andrews v. May Department Stores*, 96 Or App 305, 773 P2d 1324, *rev den* 308 Or 465 (1989), requires a different result. The sole issue on appeal is whether *Andrews* is still binding precedent in the light of more recent federal decisions.

The facts in *Andrews* were remarkably similar to those in this case. We held there that an award made pursuant to a binding arbitration provision in a CBA

"did not bar plaintiff's claims under ORS chapter 659 on principles of *res judicata* and that the parties are not collaterally estopped from relitigating facts decided in arbitration." 96 Or App at 313. (Footnote omitted.)

We stated that, "[w]ere we free to write on a clean slate, our analysis of collateral estoppel might reach a different result," but that we were constrained by *Vaughn v. Pacific Northwest Bell Telephone*, 289 Or 73, 611 P2d 281 (1980). 96 Or App at 313. (Footnote omitted.)

Defendant argues that the "slate is now clean," because the reasoning in *Vaughn* was based on *Alexander v. Gardner-Denver Co.*, 415 US 36, 94 S Ct 1011, 39 L Ed 2d 147 (1974), which has since been rejected by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US 20, 111 S Ct 1647, 114 L Ed 2d 26 (1991). Defendant misreads *Gilmer*.

In *Vaughn v. Pacific Northwest Bell Telephone, supra*, the plaintiff brought an action against her former employer under ORS chapter 659 before the grievance procedure mandated by a CBA had been completed. The Supreme Court concluded that "these statutes were intended to afford an alternative or to supplement existing remedies in a collective bargaining agreement" and held that binding arbitration was not the plaintiff's exclusive remedy. 289 Or at 87. It found persuasive the United States Supreme Court's reasoning in *Alexander v. Gardner-Denver Co., supra*, regarding statutory claims under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*, because of the similarity

between ORS chapter 659 and the statutory scheme in Title VII. 289 Or at 86-87.

In *Gardner-Denver*, the United States Supreme Court held that an employee's submission of a grievance to final arbitration under a CBA's nondiscrimination clause does not preclude the right to sue under Title VII.[5] 415 US at 49. It ruled that Title VII's enforcement scheme gives federal courts plenary power to ensure compliance with Title VII, 415 US at 45-47, and suggested that the right to judicial enforcement conferred by those statutes may not be prospectively waived. 415 US at 52. The Court carefully limited its holding to situations where a CBA purports to submit discrimination claims to binding arbitration. It noted that an employee's lawsuit under Title VII involves an individual right to equal employment opportunities, which rests on an independent statutory ground granted by Congress, and does not concern the majoritarian processes of bargaining by which a union may contractually relinquish rights in exchange for economic benefits. 415 US at 51. It emphasized that the "distinctly separated nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." 415 US at 50. The Court expressed concern that, like the collective bargaining process, arbitration may subordinate the individual employee's interests to the collective interests of all employees covered by the CBA. 415 US at 59 n 19.

Seventeen years later, the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp., supra.* In that case, a stockbroker brought a federal claim for age discrimination after being discharged from his employment with a brokerage firm. The employer filed a motion to compel arbitration of the claim, because the employee's registration application with several stock exchanges as a securities representative required arbitration of any controversy involving termination of employment. The Supreme Court concluded that a party who has made an agreement to arbitrate should be held to that agreement unless Congress intended to preclude a

---

[5] Although the District Court appeared to base its reasoning on the doctrine of election of remedies, the Supreme Court made clear that its holding was "equally applicable to the doctrines of res judicata and collateral estoppel." *Alexander v. Gardner-Denver Co., supra*, 415 US at 49 n 10.

waiver of judicial remedies for the statutory rights at issue. 500 US at 26. It held that a claim under the Age Discrimination in Employment Act (ADEA), 29 USC § 621 *et seq*, can be subject to a commercial agreement to arbitrate, because there was no showing that Congress intended to preclude arbitration of claims under that Act. Although *Gilmer* opened the door to arbitration of statutory discrimination claims previously thought to be foreclosed by *Alexander v. Gardner-Denver Co., supra*, the decision did not affect the kinds of claims at issue in this case. *Gilmer* reiterated the distinction made in *Gardner-Denver* between an employee's contractual rights under a CBA and the employee's statutory rights. It again stressed the potential disparity in interest between a union and an individual employee, and the limited authority of a labor arbitrator to resolve only contractual rights. 500 US at 34-35.

Questions about *Gilmer's* effect on Title VII claims were addressed within the year. In *Alford v. Dean Witter Reynolds, Inc.*, 939 F2d 229 (5th Cir 1991), the Fifth Circuit, on remand from the Supreme Court, held that Title VII claims, like those under the ADEA, can be subject to commercial agreements to arbitrate. However, that court explicitly recognized the continuing applicability of *Alexander v. Gardner-Denver Co., supra*, in the collective bargaining context. 939 F2d at 230. *Accord Mago v. Shearson Lehman Hutton Inc.*, 956 F2d 932 (9th Cir 1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F2d 305 (6th Cir 1991). We agree with that analysis.

In this case, the terms and conditions of plaintiff's employment were subject to a CBA. Because *Alexander v. Gardner-Denver Co., supra*, remains valid in the collective bargaining context, the Oregon Supreme Court's reasoning in *Vaughn v. Pacific Northwest Bell Telephone, supra*, has not been undercut. *Andrews v. May Department Stores, supra*, which relied on *Vaughn*, remains binding precedent. The trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.