Argued and submitted January 5, affirmed on appeal and cross-appeal
December 29, 1999

Forest L. SHULER,
*Appellant - Cross-Respondent,*

*v.*

DISTRIBUTION TRUCKING CO.,
an Oregon corporation,
and Fred Meyer, Inc.,
a Delaware corporation,
*Respondents - Cross-Appellants,*

*and*

Michael T. BLETKO,
*Defendant.*

(960705258; CA A98719)

994 P2d 167

James M. Baker argued the cause and filed the briefs for appellant - cross-respondent.

David H. Wilson argued the cause for respondents - cross-appellants. With him on the briefs was Bullard, Korshoj, Smith & Jernstedt.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

Plaintiff brought this action against his employers, Distribution Trucking Co. and Fred Meyer, Inc., for unlawful termination under ORS 659.035(1)(a) and for common-law wrongful discharge. As to both claims, plaintiff alleged that defendants wrongfully discharged him in retaliation for "exercising his lawful rights to appear and testify at the unemployment compensation hearing" of a former coworker. The trial court granted summary judgment in favor of defendants, and plaintiff appeals. Defendants cross-appeal, challenging the trial court's denial of their motion for an enhanced prevailing party fee. We affirm on both the appeal and the cross-appeal. We write to address only the issues raised by plaintiff's appeal.

Plaintiff worked as a union truck driver for defendants. Along with numerous other employees, plaintiff attended an unemployment hearing at which he was prepared to testify on behalf of a coworker and fellow truck driver (Cach) who had been discharged, purportedly for failing to follow defendants' break policies. Cach intended to call approximately 20 coworkers to testify. The hearings referee, however, determined that the listed witnesses would testify "on the same general points." The referee therefore limited Cach to presenting the testimony of three of the witnesses. Plaintiff was not one of the three that Cach chose to call. Consequently, although plaintiff went to the hearing and was willing to testify, he did not do so. Two months after the hearing, defendants discharged plaintiff. Defendants' stated reasons for the discharge were that an investigation had revealed that plaintiff had falsified several time sheets and had violated workplace break policies.

In response to the discharge decision, plaintiff invoked the arbitration provision of the collective-bargaining agreement (CBA) between his union and defendants.[1] Plaintiff was represented in the arbitration proceeding by the

---

[1] The CBA provides that the employer may discharge an employee for "just cause." Disputes arising out of the CBA are settled through the grievance procedures outlined in Article XIV of the CBA. That section provides, in part:

"It is the intention of the parties to this Agreement that all unresolved grievances or disputes between said parties must be settled by their submission to a Joint Conference Board or arbitration as hereinafter provided * * *.

union, which asserted on plaintiff's behalf that plaintiff had not been discharged for just cause but instead was discharged in retaliation for his union activities and for his participation in the Cach hearing. In the course of the arbitration hearing, all witnesses were sworn before testifying, the hearing was recorded and transcribed, both parties submitted post-hearing briefs to the arbitrator, and the arbitrator issued a written opinion.

At the arbitration hearing, plaintiff testified to the facts and circumstances that led him to believe that the discharge was retaliatory rather than based on work-related misconduct. In particular, plaintiff asserted that, at Cach's unemployment hearing, plaintiff's supervisor "stared" at each person who was present and willing to testify and that the supervisor wrote down the names of those individuals. Plaintiff further testified that his supervisor had admitted that he scrutinized plaintiff's time sheets only after seeing plaintiff at the Cach hearing. Plaintiff also called witnesses to testify on his behalf. One coworker testified that defendants similarly accused him of break policy violations and that his supervisor similarly claimed that he "became aware" of the break policy violations after seeing that coworker at the Cach hearing. In response to plaintiff's claims at the arbitration hearing, defendants put on evidence to demonstrate that they in fact discharged plaintiff because of misconduct in the form of falsifying time sheets and failing to follow company break policies.

The arbitrator ruled that defendants discharged plaintiff because he willfully violated defendants' break policies. In rejecting plaintiff's claim of a retaliatory motive for the discharge, the arbitrator was persuaded by evidence that defendants had been concerned about and had warned plaintiff about violating break policies in the past. The arbitrator

---

"* * * * *

"* * * The parties hereto agree that the decision of the Board or Arbitrator shall be final and binding upon them.

"* * * * *

"[The Arbitrator] shall be confined exclusively to the application or interpretation of a specific portion or provisions of the Agreement at issue between the parties."

stated that, if defendants had been "out 'to get' " plaintiff for "his past service as a Union steward," then they would have "charged him with dishonesty and falsification in June of 1994 when [they] first warned him for not recording breaks." The arbitrator therefore concluded that plaintiff was discharged "based solely" on plaintiff's "continued misconduct" after the prior warnings and rejected plaintiff's claims of retaliatory motivation.

The arbitrator did not, however, conclude that plaintiff's discharge was appropriate. Rather, the arbitrator determined that defendants failed to investigate plaintiff's break activities before the violations accumulated and that, before plaintiff's discharge, enforcement of some company policies had been lax. Under those circumstances, the arbitrator deemed discharge to be an excessive sanction and concluded that plaintiff should be reinstated to his former position. The arbitrator refused to award plaintiff back pay, however, reasoning that plaintiff's misconduct was deliberate, serious, and persistent and that suspension without pay was an appropriate disciplinary response. After the arbitration became final, plaintiff filed this action for unlawful termination under ORS 659.035(1)(a) and common-law wrongful discharge.

We begin with plaintiff's first assignment of error, which challenges the grant of summary judgment on his statutory unlawful termination claim. That claim was based on ORS 659.035, which provides, in part:

"(1) It is an unlawful employment practice for:

"(a) An employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee * * * *has testified in good faith* at an unemployment compensation hearing."

(Emphasis added.) The trial court entered summary judgment in defendants' favor, concluding that the statute does not apply because plaintiff did not actually testify at the hearing. Plaintiff disputes that conclusion, arguing that, although he did not give "live" testimony at the unemployment compensation hearing, he falls within the statute's

scope because he appeared in person at the hearing and was ready, willing, and able to testify. He further argues that he should be deemed to have testified because he was on Cach's witness list but was not called because the arbitrator expected all witnesses to offer similar testimony.

■    We reject plaintiff's position because we conclude that the statute expressly extends its protection only to persons who actually testify, not ones who are present and willing to do so, but in fact do not. By its terms, ORS 659.035(1)(a) prohibits an employer from discriminating or retaliating against an employee who "has testified." *See generally Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) (use of a particular verb tense in a statute can be a significant indicator of legislature's intent). The statute's past tense phrasing reflects a focus on completed conduct—specifically, the conduct of having testified. The statute is not, either expressly or by necessary implication, directed at attempts to testify, willingness to testify, or overtures and preparations in anticipation of testifying.

That conclusion is reinforced by two other considerations. First, the statute expressly protects only persons who have testified "in good faith." Whatever else that qualifier may require, at a minimum it reflects a concern with the substance of testimony and the motivations of the person giving it. It would be pure speculation for a trier of fact to determine whether someone testified "in good faith" when that person never testified. That qualifying language, likewise, gives the statute a completed act focus.

Second, other statutes demonstrate that, when the legislature intends broader protection, it provides for it expressly. ORS 654.062(5)(a), for example, prohibits employers from discriminating against an employee who "has testified or *is about to* testify" in proceedings brought under the Oregon Safe Employment Act. (Emphasis added.) Similarly, ORS 659.030(1)(f) prohibits discrimination against a person who "has filed a complaint, testified or *assisted* in any proceeding under ORS 659.010 to 659.110 and 659.400 to 659.545 *or has attempted to do so*." (Emphasis added.) Thus, when the legislature intends to protect more than the act of

actually testifying, it says so. It did not say so in ORS 659.035.

In short, for us to extend the statute to persons who are present or willing to testify would require adding words to the statute that are not there. We are not at liberty to do so. *See* ORS 174.010 (binding courts to the familiar command "not to insert what has been omitted, or to omit what has been inserted"). We therefore conclude that the trial court properly granted summary judgment for defendants on plaintiff's statutory claim. Plaintiff did not actually testify, as he concedes. Nor is the statute satisfied by the presence of his name on Cach's witness list as one of numerous witnesses who presumably would testify "on the same general points."

Plaintiff next assigns error to the trial court's grant of summary judgment on his common-law wrongful discharge claim. As to that claim, plaintiff challenges the trial court's conclusion that his appearance at the Cach hearing does not fall within the "public policy" or "societal obligation" exceptions to the at-will employment doctrine. *See Delaney v. Taco Time Int'l*, 297 Or 10, 15-16, 681 P2d 114 (1984). Defendants respond by defending the trial court's ruling and its rationale. They also offer a variety of alternative grounds for granting summary judgment, including their contention that the prior arbitration was preclusive on the issue of their motivation for plaintiff's discharge. As we discuss below, defendants are correct on that point. We therefore affirm the trial court on that alternative ground without reaching the other potential grounds for summary judgment on which defendants rely.

Issue and claim preclusion principles determine the "binding effect on a subsequent proceeding of a final judgment previously entered in a claim." *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Although they are related doctrines, they are distinguishable. Claim preclusion prohibits a party from relitigating a cause of action against the same defendant involving the same factual transaction as was litigated in the previous adjudication. Issue preclusion, on the other hand, prevents relitigation of a legal or factual issue. *Id.* at 139-40. Preclusion rules—for both issues

and claims—sometimes derive from constitutional and statutory policies. *See State v. Ratliff*, 304 Or 254, 257, 744 P2d 247 (1987) (citing examples). More commonly, however, they are a consequence of court-fashioned rules designed to prevent unnecessary relitigation and inconsistent determinations of the rights and liabilities of the parties. *Id.*

■■   Although defendants appear to argue that both issue and claim preclusion apply,[2] claim preclusion is not implicated in this case. The CBA between plaintiff's union and defendants provides that an arbitrator may determine only the rights and obligations of the parties under the agreement.[3] Where a CBA contains such a limitation, a later judicial action is not barred under claim preclusion principles unless the action is based only on the rights and obligations under the CBA. *Cf. Coulter v. Construction and General Laborers Union,* 107 Or App 522, 526-27, 812 P2d 850 (1991) (rejecting preemption argument for similar reasons). Here, the CBA confines the arbitrator to interpretation and application of the CBA. Because of that limitation, a wrongful discharge claim could not have been brought in the course of the arbitration proceeding. Claim preclusion therefore is not at work.

Issue preclusion, however, is implicated because defendants' motive for terminating plaintiff qualifies as an issue. Thus, issue preclusion potentially operates if the issue of defendants' motive actually was resolved in the arbitration and was necessary to the decision. *See Drews*, 310 Or at 139 (relitigation of issue precluded only if the issue was actually litigated and determined and was essential to the prior decision).

■   In asserting that issue preclusion supports the grant of summary judgment, defendants first contend that, as a general proposition, issue preclusion should apply to findings in an arbitration decision if the elements for issue preclusion

---

[2] In their brief and pre-oral argument supplemental memorandum of authority, defendants discuss and rely on both claim and issue preclusion principles, seemingly interchangeably and without recognizing the differences between them.

[3] Specifically, the CBA provides that plaintiff's arbitration rights under it are "confined exclusively to the application or interpretation of a specific provision or provisions of the Agreement."

are otherwise satisfied. Next, they maintain that those elements are satisfied in this case because "[t]he wrongful discharge tort requires plaintiff to prove a specific, forbidden motive for his discharge. That alleged motive, however, contradicts the conclusive arbitration award which arose from plaintiff's discharge." In response, plaintiff does not dispute that the arbitration proceeding determined the issue of the motivation for the discharge. Plaintiff asserts only that claim and issue preclusion principles are inapplicable to arbitration decisions.[4]

Contrary to plaintiff's position, the proposition that preclusion rules may apply to claims or issues decided through arbitration proceedings appears to be well-settled in this state. *See Rueda v. Union Pacific Railroad Co.,* 180 Or 133, 162-173, 175 P2d 778 (1946) (exhaustive discussion of whether arbitration decisions should be binding in a later judicial action seeking to relitigate the same issues; concluding that arbitration decision does operate as a bar).[5] To be sure, disputes arise concerning whether the requirements for issue or claim preclusion are satisfied by the facts and circumstances of particular cases. *See, e.g., Helton v. Phillips,* 155 Or App 217, 963 P2d 100 (1998) (claim preclusion not a bar to contract action where prior arbitration did not involve and actually resolve the issue to be decided in the contract action). But whether, in principle, issue and claim preclusion apply to arbitration proceedings has not been seriously doubted for decades.

---

[4] Actually, on appeal, plaintiff does not offer any argument in response to the merits of defendants' position. Instead, plaintiff asserts that, because the trial court did not decide the motion for summary judgment on the ground of issue preclusion, defendants cannot rely on that ground on appeal. Plaintiff is wrong. *Kinross Copper Corp. v. State of Oregon,* 160 Or App 513, 520, 981 P2d 833, *on recons* 163 Or App 357, 988 P2d 400 (1999) (an appellate court is not limited to issues that are the focus of the trial court's decision and may instead affirm on an alternative ground, as long as no further record would be required to support that alternate ground). We therefore describe plaintiff's "argument" based on the position that plaintiff took at trial.

[5] Before *Rueda,* earlier decisions at least had acknowledged—and arguably had held—that arbitration decisions were as binding as a judgment and, unless set aside or questioned in a proper manner, were conclusive on all matters decided; thus, they had *res judicata* effect, as the doctrine of preclusion formerly was known. *See, e.g., Jacob v. Pacific Export Lbr. Co.,* 136 Or 622, 644-46, 297 P 848 (1931) (so observing in context of action to set aside arbitration); *Hooper v. Pennick,* 102 Or 382, 387-88, 202 P 743 (1921) (same).

Nor, in our view, should there be doubt as to that general principle. Traditionally, judicial doctrines of issue and claim preclusion (originally termed *"res judicata"* and "collateral estoppel") were applied only "intramurally"—that is, to courts within the same judicial system—in implicit recognition of the "equal juridical dignity" of courts with similar or the same jurisdiction and rules of procedure. *Restatement (Second) of Judgments*, Introductory Note to Ch 6, 263 (1980). Indeed, the doctrines originally applied only when both proceedings were trials in civil cases. *Ratliff*, 304 Or at 258. Over time, however, Oregon has expanded preclusion rules to apply where both actions are criminal, where the prior action is criminal and the later action is civil, and where the prior adjudication is administrative in nature. *Id.*; *Chavez v. Boise Cascade Corporation*, 307 Or 632, 634-35, 772 P2d 409 (1989). Because common-law preclusion rules are court-developed, the courts extend the doctrines to encompass prior adjudications when doing so serves the dual policies of preventing unnecessary relitigation of claims or issues and preserving the integrity of the legal inquiry to be made. *Ratliff*, 304 at 257-58.

■     In recognition that preclusion rules potentially serve those goals in the context of arbitration proceedings, the *Restatement (Second) of Judgments* § 84(1) endorses the position that a "valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of the court." With regard to issue preclusion, the *Restatement* provides for exceptions if: (1) preclusion would be incompatible with a legal policy or contractual provision reflecting a preference for permitting the subsequent tribunal to make an independent determination of the issue in question; (2) there exists a "scheme of remedies" or other source of legal policy that reflects a preference for litigating the claim or issue in the second forum, notwithstanding the prior arbitration; (3) preclusion would be inconsistent with the arbitration agreement itself; or (4) the procedure leading to the arbitration award lacked the elements of reliability generally required to give preclusive effect to prior proceedings. *Restatement (Second) of Judgments* § 84 (1980). Oregon's approach to claim and issue preclusion in the context of arbitration proceedings

squarely accords with the *Restatement's* position. *See Peter-sen v. Gangle*, 135 Or App 514, 519, 899 P2d 725 (1995) (our court frequently looks to the *Restatement* for guidance on questions of claim and issue preclusion).[6]

■   Plaintiff identifies no reason why, if issue preclusion applies to arbitration proceedings generally, this would not be an appropriate case for application of the doctrine. Nor in these circumstances would we find any such argument persuasive. Issue preclusion typically applies when: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; and (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993); *State Farm Fire and Cas. v. Reuter*, 299 Or 155, 158-59, 700 P2d 236 (1985). All of those criteria are readily satisfied in this case.

■   Plaintiff specifically pleaded in his complaint that he filed a grievance through his union in which he alleged "that his suspension and discharge were wrongful and not for just cause." The complaint further affirmatively alleged (and thus judicially admitted) that plaintiff's position at the arbitration was that his discharge was wrongful because, among other improper bases, it was based on "his appearance to testify at the unemployment compensation hearing on behalf of Richard Cach." The arbitrator in fact framed the issue for decision in the matter as: "Whether [plaintiff's] suspension

---

[6] Below, plaintiff cited *Andrews v. May Department Stores*, 96 Or App 305, 773 P2d 1324, *rev den* 308 Or 465 (1989), as holding that claim and issue preclusion rules do not apply to arbitration proceedings. *Andrews* does not stand for that broad proposition, however. Rather, it falls within one of the exceptions identified in the *Restatement*. In *Andrews*, we were asked to decide whether a prior labor arbitration decision was binding in the context of the plaintiff's statutory discrimination claim under ORS chapter 659. We held only that the general policy favoring finality of adjudications and factual findings was required to "bow to ORS chapter 659" in light of the legislature's policy choice, as reflected in the statutes, to allow assertion of the second claim notwithstanding the prior arbitration. *Id.* at 312; *see also Faris v. Gamble, Inc.*, 133 Or App 221, 889 P2d 1363 (1995) (adhering to *Andrews*); *Drews*, 310 Or at 141 (final determination not conclusive if statute or rule of the adjudicating body provides otherwise).

and discharge were for just cause in accordance with the collective bargaining agreement?" As previously described, the arbitrator's decision actually determined that issue, concluding that the motive was not retaliatory, but rather was based on work-related misconduct. The arbitrator further concluded that the nature of the misconduct justified suspension but not discharge.

Thus, the "ultimate fact" at issue in the arbitration proceeding and in this case is identical—*i.e.*, whether plaintiff's discharge was retaliatory or was based on misconduct. That issue was essential to the arbitrator's final determination that defendants discharged plaintiff "solely" based on misconduct. Plaintiff does not contend that he had less than a full and fair opportunity to be heard on the issue,[7] that he was inadequately represented in the arbitration,[8] or that he did not have an incentive to litigate the issue below.[9] *See State Farm v. Century Home*, 275 Or 97, 105, 550 P2d 1185 (1976) (party against whom preclusion is sought has the burden of showing circumstances indicating that party did not have full and fair opportunity to contest issue in the prior adjudication). The arbitrator's decision on the "motive" issue therefore was a proper subject for preclusion.

To summarize, we hold that ORS 659.035(1)(a) does not apply to plaintiff because plaintiff did not actually testify at the Cach hearing. Defendants therefore were entitled to

[7] As we previously described, the arbitration proceeding involved judicial, trial-type procedures, including presentation of testimony through sworn witnesses and cross-examination of those witnesses.

[8] Plaintiff was represented by his union, which has fiduciary obligations to its members, and thus is in privity with them. *See generally Vaca v. Sipes*, 386 US 171, 177, 87 S Ct 903, 17 L Ed 2d 842 (1967) (discussing development of and scope of union's duty of fair representation to union members). It might be appropriate to decline to give preclusive effect to an arbitration decision if a represented employee was not provided the opportunity to participate directly in the labor arbitration and the union did not meet its duty of fair representation. *See generally Rueda*, 180 Or at 156-57 (observing that policies favoring obligation to arbitrate and conclusiveness of arbitration might not apply where obligation to arbitrate was infected by fraud, overreaching, undue pressure, or similar conduct on a representative union's part). Plaintiff, however, has never suggested that his interests were not fairly represented at the arbitration, nor does the record of the arbitration proceedings suggest as much.

[9] *See Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 455, 950 P2d 328 (1997) (full and fair opportunity to litigate encompasses notion that a party have had a strong incentive to litigate issue subject to preclusion).

summary judgment on plaintiff's statutory unlawful termination claim. We further hold that plaintiff was precluded from relitigating the reasons for his discharge to prove his common-law wrongful discharge claim. Issue preclusion properly applies when, as here, arbitration takes a quasi-judicial form that affords the parties an opportunity for a full and fair hearing before an impartial and qualified arbitrator. Defendants therefore also were entitled to summary judgment on plaintiff's wrongful discharge claim.

Affirmed on appeal and cross-appeal.