Argued and submitted January 20, decision of Court of Appeals and judgment of trial court affirmed March 22, 1988

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# STEVEN DANIEL DONOVAN,
*Petitioner on Review.*

## (DC 53517 S; CA A40898; SC S34079)

751 P2d 1109

William Uhle, of Thuemmel & Uhle, Portland, argued the cause and filed the petition for petitioner on review.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

### JONES, J.

Defendant appealed his conviction for driving under the influence of intoxicants (DUII) to the Court of Appeals, contending that the trial court erred in denying his motion to dismiss the charge on the ground of collateral estoppel. The Court of Appeals affirmed defendant's conviction. 85 Or App 237, 736 P2d 570 (1987). We affirm the decision of the Court of Appeals.

Defendant argues that the issue of his intoxication was decided in his favor at a prior probation revocation hearing and that the state cannot relitigate that issue in this DUII conviction. Thus, the issue presented is the extent to which a probation revocation hearing determination may affect a subsequent criminal trial when a litigated issue in the former proceeding is identical to one of the issues in the later proceeding. The specific questions in this case are, first, whether a decision on *any* issue in a probation revocation hearing precludes relitigation of the issue in a subsequent criminal trial and, second, whether the fact in dispute here, that defendant did not ingest a prohibited substance, was "determined" in the probation revocation hearing.

### I

This court has foreclosed relitigation of issues decided in a prior action when both cases were civil court proceedings, *Waxwing Cedar Products v. Koennecke,* 278 Or 603, 564 P2d 1061 (1977); *Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970), when both actions were criminal, *State v. George,* 253 Or 458, 455 P2d 609 (1969); *State v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956), and when the first action was criminal and the subsequent action was civil, *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 700 P2d 236 (1985). This court also has considered preclusion of issues in a criminal case that were first decided in an administrative hearing, *State v. Ratliff,* 304 Or 254, 744 P2d 247 (1987), but did not allow preclusion in that case. *North Clackamas School Dist. v. White,* 305 Or 48, 53, 750 P2d 485 (1988), decided that decisions of the Workers Compensation Board could be conclusive in subsequent actions before the same tribunal, although the issue in dispute in that case had not been decided in the first case. In reaching these decisions, this court compared the two

adjudicative forums, the nature of the decisions and the procedures by which they were reached, and the parties' interests and opportunities to litigate the actions. The basic inquiry, of course, is whether it is fair to bind a party in the present action to a determination made in some other dispute.

Here, the tribunal in both cases is the district court. The present action is a criminal prosecution. It was preceded by a probation revocation hearing, which is not easily categorized as either criminal or civil. Although a probation revocation hearing is not a criminal trial, it does invoke the criminal sanctions pending against the defendant. As in other criminal matters the district attorney represents the state in an action against an accused.

■ Because probation revocation hearings do not usually adjudicate guilt or innocence of a criminal offense, the burden of proof is the lower standard used in civil cases, preponderance of the evidence. *See State v. Eckley,* 34 Or App 563, 579 P2d 291 (1978); *State v. Fortier,* 20 Or App 613, 533 P2d 187 *rev den* (1975). This lower standard of proof would not, of course, permit the state to rely on a fact proved by a preponderance in a later criminal case. But the state's failure to prove a fact by a preponderance may foreclose its later attempt to prove it beyond a reasonable doubt.

Probation revocation hearings are conducted with less formality than a criminal trial. ORS 137.550(4) provides that the court that imposed the probation may, "after summary hearing," revoke the probation.[1] *Gebhart v. Gladden,* 243

---

[1] ORS 137.550(4) provides:

"The court that imposed the probation, after summary hearing, may revoke the probation and suspension of sentence and cause the sentence imposed to be executed or, if no sentence has been imposed, impose any sentence which originally could have been imposed. Except for good cause shown, if the hearing is not conducted within 14 calendar days following the arrest or detention of the probationer, the probationer shall be released from custody. A defendant who has been previously confined in the county jail as a condition of probation pursuant to ORS 137.540 shall be given credit for all time thus served in any order or judgment of confinement resulting from revocation of probation. In the cause of any defendant whose sentence has been suspended but who is not on probation, the court may issue a warrant and cause the defendant to be arrested and brought before the court at any time within the maximum period for which the defendant might originally have been sentenced. Thereupon the court, after summary hearing, may revoke the suspension of sentence and cause the sentence imposed to be executed."

Or 145, 150, 412 P2d 29 (1966), explains:

> "[A] hearing under ORS 137.550 need [not] take on the formalism normally associated with the taking of testimony on the issue of guilt or innocence. The hearing provided for by this statute is summary in nature just as is the hearing on imposition of sentence authorized by ORS 137.080. Trial judges have great discretion in controlling the nature and scope of summary hearings."

We need not explore the limits of how "summary" a hearing may be and still foreclose relitigation of the same issues in another case. Certainly if a judge on his or her own motion calls in a probationer for a hearing, the state is not necessarily a willing party and would not subsequently be foreclosed from litigating the same issues considered and decided by the court acting on its own. But here the state instigated the proceedings, the parties presented evidence, cross-examined witnesses, and were represented by counsel before an impartial decision-maker. These are procedural safeguards of sufficient formality to allow issue preclusion.

Because defendant seeks to use collateral estoppel against the state, the state's incentive to litigate the first action is relevant. The state requested that issues relevant to a subsequent criminal trial be determined in the probation revocation hearing. From the state's point of view, the incentive to litigate may be less in a probation revocation hearing if the only issue concerns violations unrelated to any new criminal charge. But if the decision to revoke or modify probation depends on proof of an element of a new crime, the state has an incentive to prove the fact. Here, the state sought to prove defendant's prohibited use of alcohol or drugs, a single issue essential to both the probation revocation and to the subsequent criminal trial.

## II

ORS 43.160 cryptically describes collateral estoppel as follows:

> "That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

In civil cases this court has often stated that the

judgment in a former action is conclusive in a subsequent action between the parties as to issues actually litigated and determined in the prior action if their determination was essential to the judgment. *North Clackamas School Dist. v. White, supra,* 305 Or at 53; *State Farm Fire & Cas. v. Reuter, supra,* 299 Or at 158; *Dean v. Exotic Veneers,* 271 Or 188, 192, 531 P2d 266 (1975).

■     In criminal actions where the defendant has prevailed in a former action, the doctrine of issue preclusion often is of limited aid to a defendant in a subsequent action. Where an acquittal is unaccompanied by findings on the record and there are several theories for acquittal, it will not always be apparent whether the prosecutor failed to prove a single essential element or every essential element of a crime. Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L Rev 317, 332-33 (1954), *cited in State v. Dewey, supra,* 206 Or at 511.

In *State v. George, supra,* 253 Or at 465, and *State v. Dewey, supra,* 206 Or at 508, this court stressed that the key inquiry is whether the factfinder "necessarily determined" a particular issue in a former proceeding.

If the jury returns a general verdict for the defendant, no single element of an alleged crime is "necessarily" determined against the state and for the defendant. For this reason, *Dewey* stressed the importance of the record showing that an issue was in fact determined:

> " 'It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.' * * *" 206

Or at 505 (quoting *Russell v. Place,* 94 US 606, 24 L Ed 214 (1876)).

*Cf. Sealfon v. United States,* 332 US 575, 68 S Ct 237, 92 L Ed 180 (1948) (where jury's finding of innocent in prior trial necessarily included a determination that facts essential to conviction on a second offense did not exist, *res judicata* is a valid defense).

We turn to the trial record to see what facts were decided in this case. On November 30, 1985, defendant was arrested for DUII. At the time of the stop, apparently triggered by defendant's erratic driving, he smelled of alcohol, his speech was slurred, his movements were uncoordinated, he swayed visibly while he stood and he performed field sobriety tests poorly. He was arrested for DUII. Defendant was taken to the Clackamas County Jail where he recorded a .17 blood-alcohol content on the intoxilyzer test. At that time, defendant admitted drinking a "white Russian" and smoking some marijuana.

At the time of his arrest, defendant was on probation to Clackamas County Community Corrections for his fourth DUII conviction. As conditions of probation, defendant was obliged not to commit any major traffic offenses, not to drive without being licensed and insured, not to consume any alcoholic beverages, and not to use any controlled substance without a valid prescription.

After his November 1985 arrest, his probation officer filed a probation violation report with the Clackamas County District Court alleging that defendant was in violation of his probation in the following particulars:

(1) Defendant failed to abstain from alcohol as ordered.

(2) Defendant operated a motor vehicle without valid license and insurance.

(3) Defendant failed to abstain from the illegal use or possession of controlled substances.

(4) Defendant failed to attend Alcoholics Anonymous meetings on a weekly basis as ordered, to be verified by a probation officer.

A probation revocation hearing was held on March 28, 1986. At the beginning of the hearing, the fabric for what should have been a routine proceeding became snarled. The

record is, to put it mildly, a mess, and most difficult for a reviewing court to unravel. First, the deputy district attorney did not claim any restrictions on what the state intended to prove, reporting to the court that "this is the date set for hearing on allegations of probation violation. The state is ready to proceed." The deputy district attorney then called an assistant to defendant's probation officer. This assistant had no firsthand knowledge of any facts, merely testifying from the probation officer's report, which included a police report. During direct examination of this assistant probation officer, the state at first made no reference to any limitation pertaining to the four alleged violations, but elicited hearsay information that defendant had consumed alcohol, operated a motor vehicle without a valid license and insurance, used a controlled substance and failed to attend AA meetings. After eliciting this information, the deputy district attorney stated to the witness: "With respect to the allegation that the defendant consumed intoxicants, first of all I would ask that you restrict your reply strictly to the consumption of intoxicants and not to any other violation at this time. What evidence did you have with respect to the consumption of intoxicants?" The witness read the police report that an intoxilyzer examination occurred on November 30, 1985, recording a blood-alcohol content of .17. This answer was directly relevant to the above allegation. No objection was made to this hearsay evidence. The deputy district attorney continued: "With respect to the allegation that defendant used controlled substances or possessed the same, what information do you have with respect to that information," to which the witness answered: "In talking with [the probation officer], in the report also, he stated to her that he'd used marijuana on (inaudible)." Again, no objection was made to this testimony.

We conclude from the above colloquy that the state was attempting to prove a probation violation concerning (1) the consumption of alcohol and (2) the use of a controlled substance by defendant at a time relevant to his arrest for DUII, but that the state was not going to attempt to prove the DUII case itself. In other words, the state elected to prove a violation of one or two of the conditions of probation, but a violation of either was necessarily an element of the DUII charge—consumption of intoxicants or controlled substances.

Defendant's attorney commenced cross-examination

with inquiry about defendant's license and insurance, but was interrupted by the deputy district attorney, who stated:

> "Your Honor, just for clarification, the State would ask the record reflect these questions with respect to his licensing status and the fact that he, there's an allegation he operated a motor vehicle at that time are being asked by the defense counsel and not by the State. We don't wish to bar any prosecutions with respect to the underlying charge of driving under the influence of intoxicants."

We fail to see how licensing and insurance relate to the DUII charge. In any event, the court responded:

> "(Inaudible) make a finding one way or another. What I'm saying is you can talk about this all you want to, both of you, I'm not going to make any findings."

Defense counsel then apparently agreed with the court by commenting:

> "No, I know that, Your Honor, but I'm just saying I'm rebutting the allegation that there was no valid license and insurance. * * *"

■ We are perplexed. The purpose of the probation hearing was for the court to find whether defendant was in violation of his probation and, if so, whether to continue the probation or revoke it. We infer that the court decided not to make any findings as to the DUII charge at that time. At the conclusion of the probation revocation hearing, the court stated: "I'm not making any finding relating to the use of alcohol nor am I making any finding specifically to license or AA." Yet these allegations were the basis of the state's claimed probation violations: use of alcohol, use of controlled substances, invalid license and non-attendance at AA meetings.

■ The judge was at liberty to decline to make any findings at that time and to continue the probation until the disposition of the charges in a subsequent trial.[2] Alternatively,

---

[2] The ABA Standards for Criminal Justice contain recommended procedures for instances in which the alleged probation violation is a new criminal offense. The ABA recommends that in such a case the revocation hearing be stayed until after the disposition of the criminal charge unless the probationer is detained, in which case "such a stay may be inappropriate and the detained probationer should have a right to require a prompt final revocation hearing." The ABA reasons that given the inherent informality and the lower burden of proof in such proceedings, it is not good practice to

the judge could have made findings as to the charges and entered judgment. In this case, the judge stated that he would not make findings after hearing the evidence but then signed a document entitled "Disposition and Order," finding the defendant "not guilty."

The proceedings were tape-recorded, but the original tape of this proceeding was not in the record submitted to the court. All we have is someone's attempt to transcribe the tape. At the conclusion of the hearing, the state attempted to reopen its case, apparently to reintroduce the police officer's report and some intoxilyzer documents, to which defense counsel objected. The court stated: "I'm not going to reopen at this point. I'm not satisfied at this time that there is sufficient evidence from (inaudible) probation violation. There may be in the future." The court then continued with its statement about not making any findings as to any of the issues in the case, remarking: "The evidence is pretty clear, I don't think anybody has to make a finding relating to the (inaudible). So I'm going to enter a not guilty on the probation violation today. * * * I'm not saying you're guilty of these things by any means."

In sum, the state set out to prove several allegations, then attempted to restrict proof of some. The court refused to make findings as to any of the allegations, yet found defendant not guilty of any of the charged violations.

■■ The proper procedure for a probation revocation proceeding is for the state to elect which allegations it intends to prove at the commencement of the proceedings so that both the court and the defendant will be apprised of the issues. If the court does not wish to consider certain allegations, the court should unequivocally so advise the parties. A person

---

allow the prosecution to attempt to achieve in a probation revocation hearing what it could not in a criminal proceeding. The ABA adds "one qualification":

> "Where the alleged criminal conduct also involves an incidental violation of the conditions of probation, action on the violation need not be deferred. For example, where the probationer is accused of illegal drug sales or possession, it should not be necessary to delay the revocation hearing if the condition of probation was abstinence from the use of drugs and undisputed medical evidence demonstrated continued use * * *. Testimony by the probationer at the hearing, however, would be privileged * * *." 3 ABA Standards for Criminal Justice, Standard 18-7.5(f), Commentary at 18:535 (1978).

may be charged with a probation violation consisting of commission of a new crime, which a judge may wish to have determined by a full-blown trial rather than disposing of the issue in a probation revocation hearing. However, if the state elects and a judge agrees to conduct a probation revocation hearing that concerns any of the elements of the new offense, then collateral estoppel as set forth in ORS 43.160 will apply against the state if the judge finds that a necessary element is not proven at the hearing. If, for instance, a probationer is charged with armed robbery and the alleged probation violation is carrying a weapon at the time of the robbery and the probation hearing judge determines that no weapon was involved, then the state would be collaterally estopped from proving armed robbery in a subsequent trial.

■    In order to decide whether the probation is to be continued or revoked, the court usually should find whether the probationer is in violation of any of the terms of his or her probation. This decision should not be side-stepped by the court's refusing to make any findings. Such a refusal renders the proceedings useless and a waste of everyone's time. If the court elects to conduct a probation revocation hearing on specific violations, the court should make specific findings. As this court said in *Barker v. Ireland,* 238 Or 1, 4, 392 P2d 769 (1964):

> "At such a hearing it is the duty of the trial court to decide what the facts are and then to exercise its discretion in one of two ways. The court may permit the convict to remain on probation, or may revoke the probation and order the convict held for the execution of any sentence provided by law. It is not necessary to revocation that the person on probation be convicted of a new crime, but only that the trial judge be satisfied that the purposes of probation are not being served, or that the terms thereof have been violated. * * *"

This court amplified that statement in *Barker* in the later case of *Perry v. Williard,* 247 Or 145, 147, 427 P2d 1020 (1967):

> "In *Barker v. Ireland,* [*supra*], we took note of the duty of the trial court under ORS 137.550(2) to make a factual determination. While the hearing should be limited to the narrow issue of the misconduct alleged to constitute a violation of the terms of probation, the hearing must provide a fair and trustworthy procedure for discovering the truth of any facts that may be in dispute."

■ However, if a judge conducting a probation revocation hearing departs from desired procedure by refusing to make findings, collateral estoppel does not result. An issue is precluded when a specific finding is made, not when the issue is not resolved for lack of a finding. At the end of the hearing the trial judge stated, "I'm not making any finding relating to the use of alcohol." He should have. He didn't. Therefore, the issue was not precluded for collateral estoppel purposes. We agree with the Court of Appeals that the general order disposing of the proceedings does not convert this specific refusal to make a finding into a finding.

The decision of the Court of Appeals is affirmed and the judgment of the trial court is affirmed.