Argued and submitted March 9, reversed and remanded September 5, 2007

Deanna BARACKMAN,
*Plaintiff-Respondent,*

*v.*

Anthony ANDERSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
990808315; A131326

167 P3d 994

Thomas M. Christ argued the cause for appellant. With him on the briefs was Cosgrave Vergeer Kester LLP.

Willard E. Merkel argued the cause for respondent. With him on the brief was Merkel & Associates.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

This case is before us for the second time, following a remand by the Supreme Court to the trial court for further proceedings. At issue is whether a determination in arbitration between plaintiff, who was injured in an automobile accident, and her personal injury protection (PIP) insurance provider should have been given preclusive effect in a subsequent personal injury action between plaintiff and defendant, the driver of the other vehicle involved in the accident. On review for errors of law, we conclude that it should have and therefore reverse.

The material facts of this case are undisputed. Plaintiff filed this personal injury action against defendant, alleging that she suffered injuries to her neck, her back, and two of her teeth when her car collided with defendant's car in an accident that she alleged was caused by defendant's negligence. Plaintiff also filed a claim for PIP benefits with her insurer. The insurer denied coverage for plaintiff's dental condition, asserting that it was not related to the accident. Plaintiff sought arbitration of the issue. *See* ORS 742.520(6) ("Disputes between insurers and beneficiaries about the amount of personal injury protection benefits, or about the denial of personal injury protection benefits, shall be decided by arbitration if mutually agreed to at the time of the dispute."). An arbitration panel ruled in the insurer's favor, finding that plaintiff's teeth had not been injured in the accident.

After the arbitration ruling, defendant filed an amended answer in this action, in which he pleaded issue preclusion as an affirmative defense to plaintiff's claim for damages for injuries to her teeth. Plaintiff moved for, and the trial court granted, summary judgment on the affirmative defense. A jury ultimately found defendant liable for all of plaintiff's injuries and awarded her damages. The trial court entered a judgment consistent with the jury's verdict.

Defendant appealed, asserting that the arbitration ruling should have been accorded preclusive effect. *Barackman v. Anderson*, 192 Or App 176, 84 P3d 830 (2004) (*Barackman I*). Plaintiff argued that the legislature did not intend for PIP arbitration to be preclusive and that giving

arbitration preclusive effect would violate her constitutional right to a jury trial. In our opinion, we started from the premise that " 'whether, in principle, issue and claim preclusion apply to arbitration proceedings has not been seriously doubted for decades.' " *Id.* at 179 (quoting *Shuler v. Distribution Trucking Co.*, 164 Or App 615, 623, 994 P2d 167 (1999), *rev den*, 330 Or 375 (2000)). We rejected plaintiff's arguments and concluded that the trial court had erred in granting summary judgment for plaintiff on defendant's issue preclusion defense. Consequently, we held that it erred in entering final judgment in plaintiff's favor.

The Supreme Court granted review. Plaintiff raised the same constitutional and statutory arguments that she had raised in this court, and also argued that she had little economic incentive to litigate at the PIP arbitration because none of her noneconomic damages, and only a portion of her economic damages, was at stake in that proceeding. *Barackman v. Anderson*, 338 Or 365, 369-71, 109 P3d 370 (2005) (*Barackman II*). The court held that plaintiff had waived her right to a jury trial by voluntarily choosing to arbitrate and thus rejected plaintiff's constitutional argument. *Id.* at 372. It also rejected her statutory argument, holding that the legislature had neither authorized nor prohibited preclusive use of PIP arbitration decisions. *Id.* at 371. The court also rejected her argument with respect to incentive to litigate. *Id.* Nevertheless, the court concluded that the failure of those arguments did not dispose of the question whether issue preclusion was available as an affirmative defense in this case. It stated that, "in the absence of a legislative choice one way or the other respecting the availability of issue preclusion," the question remained a matter of common law. *Id.* at 372.

The court noted that it had previously

"identified five requirements essential to the application of issue preclusion: (1) '[t]he issue in the two proceedings is identical'; (2) the issue actually was 'litigated and was essential to a final decision on the merits in the prior proceeding'; (3) '[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue'; (4) '[t]he party sought to be precluded was a party or was in privity

with a party to the prior proceeding'; and (5) '[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect.' "

*Id.* at 368 (quoting *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993)). The court pointed out that plaintiff had not addressed the five *"Nelson* factors" at any stage of the litigation. *Id.* at 369, 372. It noted that "[b]oth parties treated the preclusion question raised in plaintiff's summary judgment motion as a legal one, framed solely by plaintiff's legal arguments against according the PIP arbitration decision preclusive effect." *Id.* at 369. Thus, because "not all of the *Nelson* requirements [could] be determined on the record before [it]," the court expressed no opinion as to whether issue preclusion applied. *Id.* at 372. It remanded the case to the trial court for further proceedings. *Id.* at 373.

On remand, the trial court held an evidentiary hearing to allow the parties to develop a record on the *Nelson* factors. Defendant called William Stockton, a member of the arbitration panel that heard plaintiff's PIP dispute with her insurer, to testify about how the arbitration was conducted. He testified as to plaintiff's opportunity to present evidence at the arbitration proceeding: "There were no restrictions on what evidence you can produce. And as a panel, * * * we're called upon to make rulings on evidentiary matters, but we don't restrict what evidence, whether the doctors and medical providers, the dentists * * * testify by telephone, live, or by way of reports." He also stated that there was no limit on the amount of time that the parties could have taken to put on their evidence. With respect to the rules of evidence used in arbitration proceedings in general, Stockton testified that arbitrators

> "tend to be a little bit more liberal about the evidence that comes in simply because we all feel we're competent to sort out the good from the bad and understand, you know, the shaky evidence versus the good evidence. So we kind of try to streamline it and it's a little more liberal letting stuff in, I guess."

On cross-examination, Stockton testified that the arbitration proceeding was not recorded. He also stated that he did not

specifically remember whether the witnesses testified under oath, but he asserted that he had never participated in an arbitration where witnesses were not sworn and that he would remember if this case had been an exception.

Plaintiff also testified at the hearing. She stated that she had requested arbitration of the PIP dispute so that she could "get [her] bills paid." She also testified that she could not remember whether she or any other witnesses at the PIP arbitration testified under oath.

The trial court again ruled in plaintiff's favor:

"I conclude that *Nelson* factors 1, 2, and 4 are fully and obviously in favor of the defendant. However, applying *Nelson* factors 3 and 5, the particular nature of PIP arbitrations leads me to conclude that, in such proceedings, the claimants do not have the full and fair opportunity to be heard on the subject issue and that such proceedings are not the type to which the courts will give preclusive effect. In that connection, I am ruling on such matters generally, so that it includes this plaintiff, but do not find anything unique to this particular case."

The court entered a judgment reinstating the unsatisfied portion of the original judgment—namely, the portion related to plaintiff's dental injuries.[1] This appeal followed.

Defendant asserts again that the trial court erred in concluding that the arbitration decision was not preclusive. Specifically, he argues that, because PIP arbitrations are voluntary and because no restrictions were placed on plaintiff's ability to adduce evidence or to argue her case, plaintiff had a full and fair opportunity to be heard. Defendant also argues that PIP arbitrations are the type of proceedings to which Oregon courts give preclusive effect. He asserts that both this court and the Supreme Court so held in *Barackman I* and *Barackman II*, respectively. Specifically, he relies on our statement that " 'whether, in principle, issue and claim preclusion apply to arbitration proceedings has not been seriously doubted for decades,' " *Barackman I*, 192 Or App at 179, and the Supreme Court's statement that, "in general,

---

[1] Defendant had already satisfied the portion of the judgment related to plaintiff's neck and back injuries.

arbitration proceedings have been accorded preclusive effect in subsequent civil actions for decades," *Barackman II*, 338 Or at 370 n 4.

In response, plaintiff takes a more particularized approach. Rather than arguing that, categorically, parties to PIP arbitration do not have a full and fair opportunity to be heard and that PIP arbitrations are not the type of proceeding to which preclusion should apply, she contends that she should prevail based on the particular facts of this case. Plaintiff contends that both the third and the fifth *Nelson* factors turn on whether the proceedings at the arbitration and at the civil trial were of the same "quality" and whether her incentive to litigate was the same in both forums. She argues that defendant failed to prove that either the quality of the proceedings or her incentive to litigate were the same.

■■ The parties' arguments raise an issue that we must determine at the outset—namely, which party bears the burden of proof. The Supreme Court explained the burden of proof on issue preclusion (which was then referred to as "collateral estoppel") in *State Farm v. Century Home*, 275 Or 97, 104-05, 550 P2d 1185 (1976):

> "We have frequently stated that the party asserting estoppel has the burden of proving the elements giving rise to it, but this statement requires elaboration. Since collateral estoppel rests upon the principle that an issue was actually decided and was necessary to the judgment in the prior action, the party asserting estoppel bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings, to enable the court to reach that conclusion with the requisite degree of certainty. * * *
>
> "Once the court has concluded that the evidence is sufficient to establish that an identical issue was actually decided in a previous action, *'prima facie* the first judgment should be conclusive.' The burden then shifts to the party against whom estoppel is sought to bring to the court's attention circumstances indicating the absence of a full and fair opportunity to contest the issue in the first action or other considerations which would make the application of preclusion unfair."

(Citations omitted.) Although the court did not expressly say so in *Century Home*, the party asserting preclusion also bears the burden on the fourth *Nelson* factor—that the party sought to be precluded was a party or was in privity with a party to the prior proceeding. *State Farm Fire and Casualty Co. v. Paget*, 123 Or App 558, 562-63, 860 P2d 864 (1993), *rev den*, 319 Or 36 (1994). Furthermore, the fifth *Nelson* factor is encompassed within "other considerations which would make the application of preclusion unfair," *see State v. Donovan*, 305 Or 332, 334-35, 751 P2d 1109 (1988) ("The basic inquiry [in determining whether a proceeding is the type that should be given preclusive effect] is whether it is fair to bind a party in the present action to a determination made in some other dispute."), so the burden on that factor is on the party against whom preclusion is asserted.

■ Plaintiff notes that, in *Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 451, 950 P2d 328 (1997), we stated that "the party asserting issue preclusion bears the burden of proof on all five requirements, [after which] the party against whom preclusion is sought has the burden of showing that it did not have a full and fair opportunity to litigate." The statement that the party asserting preclusion bears the burden on "all five requirements" is inconsistent with *Century Home*, which clearly states that the *prima facie* showing does not include evidence concerning the opportunity to litigate or other circumstances indicating that preclusion would be unfair. We now clarify that the party asserting issue preclusion bears the burden of proof on the first, second, and fourth factors, after which the party against whom preclusion is asserted has the burden on the third and fifth factors.

■ In this case, the trial court ruled that the first, second, and fourth *Nelson* factors favor defendant, a ruling that plaintiff does not challenge. It follows that defendant made a *prima facie* case that the arbitration ruling should be preclusive and that the burden thus shifted to plaintiff to show that the third and fifth *Nelson* factors were not satisfied.

■ With that in mind, we turn to the parties' arguments concerning the third *Nelson* factor—whether plaintiff had a full and fair opportunity to be heard on the issue on which

defendant seeks preclusion. Defendant argues in effect that any party that entered into binding arbitration voluntarily and had control over the procedural and evidentiary rules cannot be heard to argue that a full and fair opportunity to litigate was not afforded. Plaintiff argues that the opportunity was not full and fair for two reasons: First, she argues that there were significant "quality" differences between the arbitration hearing and the civil trial. According to plaintiff, the arbitration hearing was informal, not recorded, not subject to procedural or evidentiary rules, and was conducted under an "anything goes" standard.[2] Second, plaintiff contends that her incentive to litigate was not the same in both forums because the arbitration concerned only the portion of plaintiff's medical expenses and wage loss eligible for payment under her PIP coverage.[3]

We need not decide the question involved in the third *Nelson* factor on the broad ground that defendant advances. Rather, we conclude that plaintiff failed to prove that she did not have a full and fair opportunity to be heard at the arbitration hearing. Nothing in the record shows that she was denied that opportunity. On the contrary, Stockton testified that there were "no restrictions" on the evidence

---

[2] Plaintiff also argues that the quality of the arbitration was inferior because it was not subject to judicial review. However, a reviewability requirement applies only to administrative adjudications, not to arbitration. *Compare Chavez v. Boise Cascade Corporation*, 307 Or 632, 635, 772 P2d 409 (1989) (stating that preclusive effect may be given to "necessary findings in a formal administrative adjudication if the parties had both a full opportunity and the incentive to contest the point at issue on a record that also was subject to judicial review"), *with Rueda v. Union Pacific Railroad Co.*, 180 Or 133, 156-57, 175 P2d 778 (1946) (holding that limited grounds on which judicial review of arbitration decisions is available does not bar giving such decisions preclusive effect).

[3] We note that neither of plaintiff's arguments properly addresses the third *Nelson* factor. Whatever the merits of plaintiff's arguments concerning differences in the quality of the proceedings and the incentive to litigate may be (we consider— and reject—her arguments below), they do not advance her position with respect to whether she had a full and fair opportunity to litigate. The parties' incentive to litigate and differences between the two forums are both considerations under the fifth *Nelson* factor, not the third. *See, e.g., Washington Cty. Police Officers v. Washington Cty.*, 321 Or 430, 437, 900 P2d 483 (1995) (expressly considering "incentive" as part of the court's analysis of the fifth *Nelson* factor); *Nelson*, 318 Or at 104 n 4 (whether the initial forum "maintains procedures that are 'sufficiently formal and comprehensive' " is a consideration under the fifth factor). The question under the third factor is whether plaintiff was denied the opportunity to adduce the evidence or make the arguments that she needed to prevail on her claim.

that plaintiff was allowed to adduce at the hearing and no limit on the amount of time that plaintiff could have taken to put on evidence. In short, we conclude that the third *Nelson* factor favors allowing issue preclusion.

We turn to the fifth *Nelson* factor, under which we consider whether the prior proceeding was the type of proceeding to which the courts will give preclusive effect. Defendant argues that both this court and the Supreme Court resolved that issue in our earlier opinions in this case. *See Barackman II*, 338 Or at 370 n 4 ("We note that, in general, arbitration proceedings have been accorded preclusive effect in subsequent civil actions for decades."); *Barackman I*, 192 Or App at 179 (" '[W]hether, in principle, issue and claim preclusion apply to arbitration proceedings has not been seriously doubted for decades.' "). Defendant also relies on our rejection of plaintiff's argument that arbitration proceedings are intended to be quicker and less costly than judicial proceedings.

As noted above, plaintiff makes the identical arguments that she made with respect to the third *Nelson* factor. That is, she contends that the arbitration hearing in this case was not the type of proceeding to which courts will give preclusive effect because (1) there were substantial "quality" differences between the arbitration hearing and the civil trial and (2) plaintiff had less incentive to litigate in the arbitration hearing than she had at trial.

■ We begin with defendant's contention that both we and the Supreme Court have already decided the fifth *Nelson* factor in his favor. Defendant reads too much into our prior opinions. The statement that arbitration proceedings have for decades been afforded preclusive effect does not mean that, as a categorical matter, arbitration decisions are *always* preclusive in later proceedings. Rather, we simply rejected plaintiff's converse contention—that, as a categorical matter, PIP arbitration decisions should *never* be given preclusive effect. As to that contention, we concluded that, if, on the ground that arbitration proceedings are intended to be quicker and less costly than judicial proceedings, preclusive effect should never be given to a PIP arbitration decision, it

should, by the same reasoning, never be given to *any* arbitration decision. Because that result clearly conflicts with established Oregon law, we rejected plaintiff's argument. *Barackman I*, 192 Or App at 180. Nothing in the Supreme Court's opinion in *Barackman II* indicates that it embraced the notion, advanced by defendant in this appeal, that PIP arbitrations are preclusive as a categorical matter. On the contrary, the court stated that, *"in general*, arbitration proceedings have been accorded preclusive effect," 338 Or at 370 n 4 (emphasis added), thus indicating that there are instances in which preclusion does not apply.

 Other cases also indicate that the fifth *Nelson* factor is not strictly categorical. *Shuler*, 164 Or App at 624—which we quoted in *Barackman I* for the proposition that, "in principle, issue and claim preclusion apply to arbitration proceedings," *see Barackman I*, 192 Or App at 179—states that the preclusive effect of arbitration decisions is subject to "exceptions and qualifications." One exception applies where "the procedure leading to the arbitration award lacked the elements of reliability generally required to give preclusive effect to prior proceedings." *Shuler*, 164 Or App at 624 (citing *Restatement (Second) of Judgments* § 84 (1980)). Determining whether that exception applies necessarily entails examination of the circumstances of the arbitration proceeding in question. *Cf. Donovan*, 305 Or at 336 (considering the circumstances of the hearing in question in determining whether decisions in probation revocation hearings can be preclusive in later criminal trials).

 Thus, we turn to plaintiff's argument that there were quality differences between the PIP arbitration and the court trial of her personal injury claim and that she had less incentive to litigate in the arbitration. We digress momentarily to consider the premise of plaintiff's argument—namely, that the quality of the proceedings and the incentive to litigate must be the same in both forums. In support of that premise, plaintiff relies primarily on the following passage in *North Clackamas School Dist. v. White*, 305 Or 48, 52-53, 750 P2d 485, *modified on other grounds on recons*, 305 Or 468, 752 P2d 1210 (1988):

"We see no reason why the rules of [preclusion] should not apply in this case. The same quality of proceedings and opportunity to litigate is present in both proceedings. If the incentive to litigate the question is substantially the same, the procedural requisites for application of the issue preclusion rule would appear to exist. The forum—the [Workers' Compensation] Board—is the same in both cases. Therefore, we need not further consider the relative competence and responsibility of the two forums."

(Citation omitted.)

■ This time, it is plaintiff who reads too much into the cited passage. With respect to the "incentive to litigate," the court appears to have assumed that the incentive was the same in both proceedings—it said nothing more in the opinion about incentive to litigate. We take *North Clackamas School Dist.* to mean only that, if the incentive was the same in both proceedings, the party against whom preclusion is asserted necessarily had an adequate incentive in the first proceeding. In other words, showing that the incentive was the same is sufficient, but not necessary, to support preclusion. Neither we nor the Supreme Court have ever held that the incentive to litigate must be the same in both proceedings. *Cf. Meyers v. Burwell*, 271 Or 84, 89, 530 P2d 833 (1975) (affirming the preclusive effect of a traffic conviction, which the defendant described as a "minor criminal matter" to which he ordinarily "would give only perfunctory attention," in a later "serious civil case" involving the same traffic accident); *Shannon v. Moffett*, 43 Or App 723, 726-27, 604 P2d 407 (1979), *rev den*, 288 Or 701 (1980) (concluding that incentive was not a persuasive factor against applying issue preclusion even though, in the first proceeding, the defendant "only faced possible sanctions against his Coast Guard license, whereas in [the subsequent proceeding] he face[d] potential liability of $40,000").

■ Similarly, although the court noted that the "quality of proceedings" was the same in both forums, it did not hold that it *must* be the same. Again, to support preclusion, it is sufficient, but not necessary, to show that the procedural quality was the same. The *Restatement (Second) of Judgments*, on which the court relied in *North Clackamas School Dist.*, explains that

> "[t]he comparison of procedures should focus on the practical aspects of the procedures involved and not simply on matters of form. For example, proof-taking in an administrative or arbitration tribunal may be relatively informal but may nonetheless permit the parties to present substantially the same evidence that might be adduced through the more formal procedures characteristic of courts."

*Restatement*, Introductory Note to ch 6 at 265; *cf. id.* at § 84 comment c ("When the arbitration procedure leading to an award is *very* informal, the findings in the arbitration should not be carried over through issue preclusion to another action where the issue would otherwise be subjected to much more intensive consideration." (Emphasis added.)). The *Restatement* thus indicates that the procedural quality of the two proceedings need not be the same and that preclusion applies as long as the differences are not too great.

 *Donovan* is illustrative. The court there held that, although "[p]robation revocation hearings are conducted with less formality than a criminal trial," the "procedural safeguards" employed in that case were "of *sufficient* formality to allow issue preclusion." 305 Or at 335-36 (emphasis added). Like the *Restatement*, *Donovan* shows that the question is not whether the quality of the two forums is the same, but whether the "procedural safeguards" in the first forum were "of sufficient formality."

 ■ Thus, to the extent that plaintiff's argument is premised on the notion that the procedural quality and the incentive to litigate must be the same in both proceedings, we reject the argument. Instead, we consider whether the differences in quality and incentive were so great that it would be unfair to accord the arbitration decision preclusive effect. We turn to that question, beginning with procedural quality.

 Plaintiff challenges the evidentiary standards that were employed in the arbitration, contending that the hearing was not subject to any rules of evidence. The evidence in the record—specifically, Stockton's testimony—does not support that contention. Although Stockton testified that the arbitration panel "tend[ed] to be a little more liberal about the evidence that [came] in," he also stated that the panel was "called upon to make rulings on evidentiary matters,"

which indicates that evidentiary rules *were* applied. Furthermore, Stockton explained that the panel was "a little more liberal" about allowing evidence to come in because, as lawyers, the arbitrators "all feel that we're competent to sort out the good from the bad and understand, you know, the shaky evidence versus the good evidence." In all events, plaintiff again fails to carry her burden and does not identify any evidence admitted at the arbitration that would have been inadmissible in court and that may have affected the outcome of the arbitration. We are not persuaded that the evidentiary standards employed in the arbitration were so lax as to call into question the reliability of the arbitrators' decision. *See Shuler*, 164 Or App at 624 (preclusion does not apply if the arbitration lacked elements of reliability); *Restatement*, Introductory Note to ch 6 at 265 (arbitration can be preclusive even though "proof-taking in an * * * arbitration tribunal may be relatively informal").

Plaintiff also argues that the witnesses at the arbitration hearing did not testify under oath. The record developed at the evidentiary hearing on remand is, at best, inconclusive on that issue: Neither plaintiff nor Stockton specifically remembered whether the witnesses were sworn, though Stockton stated that he had never participated in an arbitration where the witnesses were not sworn. Because plaintiff bore the burden of proof, the issue weighs in favor of preclusion.

Plaintiff also advances a broader challenge to the overall "quality" of the arbitration, asserting that no rules of civil procedure were applied. *Donovan* again guides our determination. It indicates that the "procedural safeguards" that were used at the arbitration hearing in this case were sufficient to allow issue preclusion. In *Donovan*, the state—the party against whom preclusion was asserted—had instigated the proceedings, the parties had presented evidence and cross-examined witnesses, and they were represented by counsel before an impartial decision-maker. The court held that those procedures were sufficient to allow preclusion. 305 Or at 336. Here, plaintiff requested the arbitration, the parties presented evidence without limitation, they were permitted to cross-examine witnesses, they were represented by counsel, and the impartiality of the arbitration panel is not

disputed. We conclude that the procedural safeguards in this case were sufficient.

■ We consider finally plaintiff's argument that her incentive to litigate at the arbitration hearing was substantially inferior to her incentive at the trial of her civil action against defendant. The problem for plaintiff here is that she made the same argument to the Supreme Court in *Barackman II*, and the court rejected it. 338 Or at 371 ("Plaintiff argues next that she had little incentive to contest the dispute over dental treatment in the arbitration, because the amount of damages was less than or merely a subset of what plaintiff could obtain in a subsequent civil action. * * * Plaintiff simply has not demonstrated that the forum somehow prevented her from offering the proof that she needed to show to prevail on her PIP claim."). It is not clear whether plaintiff was free on remand to relitigate the incentive question, but, even if she were, she does not point to any additional evidence developed on remand that should lead to a different conclusion. We therefore reject her argument.

■ In summary, plaintiff failed to demonstrate that she did not have a full and fair opportunity to be heard or that the arbitration proceeding was not the type to which we will give preclusive effect. Thus, both the third and the fifth *Nelson* factors favor defendant. Because plaintiff does not challenge the trial court's conclusion that the other three *Nelson* factors favor defendant, we conclude that plaintiff should have been precluded from relitigating the issues related to her dental injuries. It follows that the trial court erred in entering judgment in plaintiff's favor on those issues.

Reversed and remanded.